## J. A. REN *et al.* v. STATE.

No. A-1659.   Opinion Filed June 30, 1913.

(132 Pac. 1131.)

**INTOXICATING LIQUORS—Criminal Law—Verdict—Sufficiency of Evidence.** To justify or sustain a conviction of having possession of intoxicating liquor with intent to violate any of the provisions of the prohibitory law, there must be evidence sufficient to prove possession, and also evidence of the criminal intent. When a verdict is manifestly contrary to the evidence, this court has no discretion, but must reverse the judgment. (See opinion for evidence held insufficient to sustain such a conviction.)

(Syllabus by the Court.)

*Appeal from County Court, Pawnee County;*
*Fred S. Liscum, Judge.*

J. A. Ren and another were convicted of violating the prohibition law, and appeal. Reversed and remanded, with directions.

*W. G. Fairchild,* for plaintiffs in error.

DOYLE, J. The plaintiff in error, with one Willard Page, were jointly charged with having in their possession liquor with the unlawful intent to sell, barter, give away, and otherwise furnish the same. The jury returned a verdict of guilty as to each defendant. The judgment of the court was that the defendants each be confined for 30 days in the county jail, and that each defendant pay a fine of $50. The defendants, J. A. and Elmer Ren appealed from the judgment. The defendant, Willard Page, being unable to give bail, served his sentence.

It is contended that the verdict is contrary to the evidence and is insufficient to sustain the conviction.

Joseph Rucker testified that he assisted the city marshal of Ralston in serving the search warrant on a house owned by the defendant J. A. Ren, and they found there a trunk

containing 71 pints of whisky; that they took the whisky to
the police court, where it was suggested that, in order to pre-
vent the whisky from being stolen, they would divide it and
each take some of it to his home, and keep it for evidence;
one bottle that was produced in evidence was all that witness
could account for; that the police judge and city marshal
had informed him that the rest of had been stolen.

John Sebring testified that he lived in a house owned
by the defendant, J. A. Ren, occupying two rooms; that two
other rooms were vacant; that he heard some persons placing
the trunk in one of the vacant rooms on the night of August
25th, and thought he recognized the voice of the defendant·
J. A. Ren, but was not sure; that the next day he informed
City Marshal Jones that he heard J. A. Ren say it was Wil-
lard Page's trunk.

C. H. Deskeet testified that he was a justice of the peace
of the town of Ralston, identified the trunk, and some Joplin
newspapers that were in it; that the city marshal took 20
bottles of the whisky, and told witness that it was stolen from
him; that the other 40 or 50 pints were stolen from the room
in which the trunk was placed adjoining the police court-
room.

The state rested, and the defendants moved that the court
direct a verdict of not guilty, which was overruled.

The defendant Page as a witness for the defense denied
any knowledge of the trunk, but admitted that he had just
returned from Joplin, Mo.

The defendant J. A. Ren testified that he was a carpenter;
had lived and worked at his trade for several years at Ralston,
and owned the house the trunk was found in; that his young
son told him that his son Elmer had been arrested; that he
found the city marshal, and he said, "We have found a trunk
in your house with whisky," and "I said 'If there is go and
get it out,' and he wanted to know where Willard Page was,
and I told him, and we then went to the house, and he asked

them to take the trunk out of the house;" that this was the first time he saw the trunk and knew nothing about it, or where it came from.

The defendant Elmer Ren testified that he was a laboring man, that the first time he ever saw the trunk was when he went with the city marshal to the house where the trunk was found, the house was occupied by the witness Sebring and was owned by his father; that he had not lived in the house for about a year, but they had some carpenter's tools and a heating stove in the empty rooms; that Williard Page worked for his father cutting corn.

J. M. Brock testified that he was a state enforcement officer; that he had known the Ren family five or six years, and that they always worked for a living; that the Saturday after the trunk was taken he was at Mr. Bullick's hay outfit; six miles east of Ralston; that the phone rang, and Mr. Bullick was shaving, and asked him to answer the phone; that there was a lady talking, and said she wanted to talk to her brother, Sam Weatherly, and she said when Sam came in tell him that they have found that trunk, and have him go and go now; that as an enforcement officer he made a demand upon the city marshal and the police judge on the day these defendants were arrested for the liquor that was found in the trunk for the purpose of destroying it, and they told him that it had been stolen.

Fred Williams testified that he had loaned some money and a suit of clothes to Sam Weatherly in August; to go to Kansas City, and when he came back he told him that he had brought 80 pints of whisky in the trunk.

Jesse Hedges testified that he heard Sam Weatherly say on the day this trunk of whisky was seized that it was his whisky.

James Lee testified that he was a liveryman; that he let a man by the name of Weatherly have a team to haul a trunk from the depot; that, when he left, he thought of the bad condi-

tion of the bridge, and followed him and overtook him at the bridge. They brought the trunk back to his barn, and later two men carried it away.

There is no evidence that these defendants owned this trunk or the whisky in it. The only evidence of their possession is the fact that the house in which the trunk was found belonged to the elder Ren. Assuming that there was evidence of possession, there is no evidence to show an unlawful intent.

It is a cardinal principle in our jurisprudence that the jury is the ultimate tribunal for the investigation and determination of questions of fact. Whether, however, the state fails to offer any evidence tending to prove the offense charged, or whether the evidence offered tends to prove anything pertinent to the issue, is a question of law for the court, and where there is an entire absence of evidence tending to identify the defendant with the commission of the offense charged in the information the court should direct a verdict of acquittal.

It is seldom that this court has felt it to be its duty to reverse the ruling of a trial court in refusing to set aside a verdict for the want of sufficient legal and competent evidence to sustain it. But when, as in this case, it is manifest to this court that the verdict is clearly contrary to the evidence, and that the judgment is wrong and ought not to stand, we have no discretion in the matter, but must reverse the decision of the trial court. One thing that appears very strange in this case is the fact that the officers by their testimony were afraid that the whisky seized would be stolen from them, and they divided it up among them, so that it would be safe, and yet, after taking this precaution, at the time of the trial it seems that only one half-pint bottle could be produced for evidence.

It is not necessary to consider the other questions presented. For the reason stated the judgment is reversed, and the cause remanded to the county court of Pawnee county, with direction to discharge the defendants.

ARMSTRONG, P. J., and FURMAN, J., concur.