## COTTON WALKER v. STATE.

*No. A-6339.    Opinion Filed Aug. 4, 1928.*
(269 Pac. 381.)

Bridges, Vertrees & Ivy, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter referred to as the defendant, was convicted in the county court of Jefferson county, on a charge of having possession of intoxicating liquor for the purpose of selling, giving away, and otherwise disposing of the same in

violation of the prohibitory laws; was sentenced to 90 days' imprisonment in the county jail and to pay a fine of $150. Motion for new trial was filed and overruled, and the case has been appealed to this court.

The testimony on behalf of the state is in substance as follows: That they procured a search warrant to search the house located on lot 15, in block 59, in the city of Ryan, Jefferson county, Okla.; that a man by the name of George Walters had the house rented.

Frank Driskill testified that they searched the house on lot 15, in block 59, about 10 o'clock in the morning, and found Heck Cremer at the house; that they found about 1½ gallons of whisky, some bottles, fruit jars, cards, and dice, and some crates the bottles had been shipped in; that he did not have any conversation with the defendant about the whisky and the things he found in the house.

Mr. Driskill, on cross-examination, stated that George Walters and Heck Cremer were living at the place where they found the whisky.

W. F. Spain testified as to having issued the search warrant for the house on lot 15, in block 59, to be searched; that he issued the search warrant upon the affidavit of Mr. Driskill to search lot 15, block 59; that the defendant, Cotton Walker, was living at this house at the time; did not know how long he had been living there; that Heck Cremer and George Walters also lived at this house; the defendant was not there the morning the house was searched; that he does not recall having seen the defendant in town the morning the house was searched.

B. E. Adams, a deputy sheriff, called as a witness for the state, testified he was present when the house was searched; that he did not have a conversation with the

defendant about living at the house, but on one occasion he saw the defendant pay Dr. Wade $8; the place belonged to Dr. Wade; that he had seen the defendant around the place a number of times. Witness Adams was asked the following questions:

"Q. Did you ever see the defendant there prior to this time, on the premises or doing anything with whisky there?

"Mr. Ivy: I object to what he saw before that; that don't prove anything in this case. I object to it for the reason, it is incompetent, irrelevant, and immaterial. There has not been any evidence introduced to show that he had possession of whisky.

"By the Court: Overruled; exceptions by Mr. Ivy.

"Mr. Ivy: I wish to make a general objection to all of these questions. A. Yes, sir.

"Q. What did you see him doing with it? A. I don't say for sure whether it was him or one of the other parties.

"Q. You did not see him doing anything; they were all together? A. Yes, sir."

J. W. Browning, called as a witness on behalf of the state, testified he was deputy sheriff; that he knew the defendant; that he had often seen the defendant give Dr. Wade money. Witness was then asked the following questions:

"Q. Do you know of your own personal knowledge that the defendant was handling whisky while he was staying there for the past six or eight months?

"Mr. Ivy: Object to, calling for a conclusion of the witness.

"By the Court: Overruled.

"Q. I will ask you this question, Do you know the defendant's reputation is such in the city of Ryan as a man who handles whisky in violation of law?

"Mr. Ivy: Objected to; incompetent, irrelevant, and immaterial.

"The Court: Sustained."

On cross-examination the witness stated that George Walters and Heck Cremer were living at the house when it was searched; that he did not know who the whisky belonged to.

H. H. Moler, called as a witness on behalf of the state, testified he knew where the house was that was searched. he had a conversation with the defendant about whisky; the defendant told him he was not at the house when it was searched.

Questions by the county attorney:

"Q. What else did he tell you about handling whisky, if anything?

"Mr. Ivy: I object to what he told about handling whisky. I object to the general conversation about handling whisky.

"By the Court: I will sustain it on the ground of the word 'handling.'

"Q. Did he tell you he had been selling whisky in violation of law or giving it away?

"Mr. Ivy: I object; incompetent, irrelevant, and immaterial; doesn't tend to prove any issues in this case.

"By the Court: Overruled. (Exceptions by Mr. Ivy.)

"A. Yes, sir; he told me that he handled it.

"Q. What else did he say? A. He told me several different times he was handling it, and said, 'Don't you want to buy a pint?'

"Mr. Ivy: I object to the answer and question; incompetent, irrelevant, and immaterial. (Sustained by the court.)

"Q. What did he say with reference to being able to catch him?

"Mr. Ivy: Objected to; incompetent, irrelevant, and immaterial. (Sustained by the court.)"

On cross-examination he said defendant's statements were made in a joking way. Witness further testified that George Walters and his boy and Heck Cremer were staying in the house that was searched, and that he did not know whose whisky it was.

Frank Arner testified he saw the defendant at the house the morning of the day on which the search was made and defendant told him he was going to Texas to visit his mother.

It was agreed between the county attorney and the defendant's attorney that L. L. Wade rented the house on lot 15, block 59, to George Walters, and that the same had been rented by George Walters from the 14th day of October, 1925, until the 14th day of April, when the said Walters turned said property back to L. L. Wade.

At the close of the testimony for the state the defendant demurred to the evidence of the state, on the ground that the same was insufficient to prove or establish that the defendant had committed a public offense or had violated any laws of the state of Oklahoma, which demurrer was overruled and defendant duly excepted.

Defendant has assigned five errors alleged to have been committed by the court in the trial of his case. The first and second assignment of errors relate to the evidence being insufficient to sustain the verdict, and the verdict being contrary to law. It is urged by the defendant that the testimony of the state is wholly insufficient to sustain a conviction against him of possession of intoxicating liquor with intent to sell or dispose of the same in violation of law. The proof in this case shows that George Walters had rented the house that was searched from L. L. Wade, and that, when the search was made, Heck Cremer was the only one found in the house where

the whisky claimed to have been found by the sheriff was. The defendant was not on the premises and some of the state's testimony tends to show that he had on the morning prior to the search gone to Texas to visit his mother. Some testimony is introduced to show that the defendant had been around the place and sleeping in the house where the whisky was found. The state introduced some testimony to show that some one of its witnesses had had a conversation with the defendant in which he told him he was handling whisky, and asked if he did not want to buy some. On cross-examination witness stated defendant had said it in a joking way.

The defendant was tried upon a specific charge that on a certain date he had in his possession certain intoxicating liquor with intent to violate the prohibition laws of the state. There is no testimony which tends to show that the defendant was in actual or constructive possession of the whisky at the time it was found, or that he had ever been in possession of this whisky; nor is there any testimony in the record that this defendant made the statement to any one that the whisky found was his, or that he had any interest in it.

The defendant at the close of the testimony for the state demurred to the evidence, on the ground that it was insufficient to convict the defendant of any crime, which demurrer was overruled by the court, and defendant reserved his exceptions, and urges that the court erred in overruling his demurrer, and that, by reason of the action of the court in overruling his demurrer, his rights had been prejudiced before the jury, resulting in the jury returning a verdict of guilty.

It is necessary, in order to sustain a conviction in a case of this character, not only to show possession of the whisky by positive testimony or circumstances sufficient to overcome the presumption of innocence, but to con-

vince the jury beyond a reasonable doubt of the guilt of the defendant. This court has repeatedly held that it would not disturb the verdict of a jury where there was competent evidence to support the finding of the jury, even though the evidence is conflicting.

In Ward v. State, 15 Okla. Cr. 61, 175 P. 60, this court said:

"It is a cardinal principle in our jurisprudence that the jury is the ultimate tribunal for the investigation and determination of questions of fact. Whether, however, the state fails to offer any evidence tending to prove the offense charged, or whether the evidence offered tends to prove anything pertinent to the issue, is a question of law for the court, and where there is an entire absence of evidence tending to identify the defendant with the commission of the offense charged in the information, the court should direct a verdict of acquittal. Ren v. State, 9 Okla. Cr. 671, 132 P. 1131. Defendants should not be convicted upon mere suspicions of guilt, or even strong probabilities of guilt. To warrant their conviction, the testimony, when all considered, should be clear and convincing, entirely satisfying the minds and conscience of the jury."

The record shows that Heck Cremer and George Walters were jointly charged with the defendant in this case, and the testimony shows that Heck Cremer was found in the house where the whisky was found when the officers made the search. The only testimony tending to connect the defendant in any way whatever with the possession of the whisky is the testimony of some of the witnesses that the defendant had been rooming in the same house where the whisky was found. Defendant was not at the place at the time it was searched. He was in Texas, visiting his mother. The fact that the defendant was living at the place where the whisky was found in the room where Heck Cremer was sleeping only raises a suspicion that the defendant might have known that the whisky was there; but we do not think it sufficient to

overcome the presumption of innocence, in the absence of any positive testimony connecting the defendant with the possession of the whisky, or any positive testimony showing the defendant having been connected with the selling or disposing of the whisky in violation of the prohibitory laws.

The defendant urges that the county attorney committed error prejudicial to his case by asking incompetent, irrelevant, and immaterial questions. An examination of the record shows there were some questions propounded by the county attorney to the witnesses that were improper, but to most of them the court promptly sustained the objection of the defendant. We do not think the rights of the defendant were prejudiced by the questions propounded by the county attorney, when the court sustained the timely objections to the question.

There are other errors assigned, but from the view we take of this record it is not deemed necessary to consider them. The testimony, as disclosed by this record, raises a suspicion of the defendant's guilt, but is insufficient to sustain the verdict and judgment.

For the reasons herein stated, the case is reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.