## C. O. PATTERSON v. STATE.

No. A-6560.   Opinion Filed May 18, 1929.
(277. Pac. 674.)

John T. Hays, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted in the county court of Kiowa county, on a charge of having in his possession intoxicating liquors on the 18th day of December, 1926, on the southwest quarter of section 15—17—19, with the unlawful and wrongful intent on the part of the defendant to violate the prohibitory liquor laws, and his punishment fixed at 60 days in jail and a fine of $250. Motion for new trial was filed, considered, and overruled, and defendant excepted and has appealed to this court.

The evidence on behalf of the state, in substance, is: Sam Standerfer stated he was deputy sheriff on the 18th day of December, 1926; knew the defendant, and went out to where the defendant was then living; he had a search warrant to search the premises; W. E. Settle went with him; they drove up in the yard where the defendant was living and parked their car; the defendant came out and "we advised him we had a search warrant to search for intoxicating liquor, and defendant said, 'All right, go ahead.' We searched the house and outbuilding and did not find anything; I went west of the barn and crossed the fence, saw some tracks, followed the tracks down a little road that had been made where they had been hauling cotton from the field for something like 250 to 300 yards, where there were some cotton stalks where the land had been cultivated in cotton for 1926, and we found in this cotton patch, under some grass, a half-gallon fruit jar full of corn whisky; Mr. Settle at the time was near the barn with Mr. Patterson." Over the objection of the defendant, the witness was then permitted to tell about seeing defendant's two sons in the pasture some distance away, who started their car and went east hurriedly. "I pursued them about a mile, where they stopped at some alfalfa haystacks." The court permitted the witness to state his idea of what the boys were doing at the haystack a mile away, and defendant reserved an exception. The court also permitted the witness, over the objection of the defendant, to state that when he went to his car, after they had gotten through with the search, some wiring was out of order and he could not start it. The witness did not contend that defendant had anything to do with his car.

The testimony of W. E. Settle was, in substance, the same as the testimony of the first witness. All of the testi-

mony on behalf of the state shows that the fruit jar of whisky was found 250 to 300 yards from the barn at the place where defendant was living, and in a field where cotton had been cultivated in 1926.

The defendant testified for himself, and stated he was living on the C. G. Long place on the 18th of December, 1926; that he had been living there two or three weeks; Mr. Long had arranged for defendant and his family to pick cotton on Mr. Long's place; that while they were picking cotton Mr. Long had agreed to let them have the use and occupancy of the house; he had contracted with Mr. Long that after the 1st of January, 1927, he would work for Mr. Long for wages and Mr. Long was to let his family have some land to cultivate for the year 1927. Defendant stated the whisky found by the officers did not belong to him; he did not know anything about it; had never been in possession of it; he never saw or knew anything about it until the officers claimed they found it in the field about 250 to 300 yards from the house where he was living. The defendant was then asked by the county attorney if his boys had not left the house about the time the officers found the whisky, which was objected to by the defendant, the objection overruled, and defendant excepted. The defendant stated his boys went to the field in the car; that he was in the house when the boys went away; his married son was at the house when the officers came, and he did not leave the house. The two boys that went out in the field were Jack and Dutch, as defendant remembered. "I knew the officers were searching the place and told them to go right ahead and search; I suppose the boys went to the field to pick cotton, as they had been picking cotton over where they went, and the frost was about off that morning; I did not see the boys any more until just before we got to town."

C. G. Long was called on behalf of defendant, and stated he was the owner of the place; that his renter had cultivated the land for the year 1926, and had picked about seven bales of cotton, but as he had farmed the land on a 50-50 basis, he could not make anything after he had paid the rental and he had gone away and left the cotton, and the witness C. G. Long hired the defendant and his family to gather the cotton for him and had agreed for defendant to work for him for wages, and was to let the defendant's family have some land to cultivate, but he had not decided as to what land it was. This is, in substance, all the testimony that was introduced. It is not contended on behalf of the state that it had any evidence whatever showing this defendant had ever been in possession of the one-half gallon of whisky the officers claim to have found out in the cotton patch, over 250 to 300 yards from the barn; it was admitted they found no indication of the keeping of whisky, the handling of whisky, or the manufacturing of whisky where the defendant was living; the state proved that defendant had a number of sons, and, over the objection of the defendant, that two of them went from the pasture out in the field where there were some alfalfa haystacks more than a mile from where the defendant was living. The defendant had not cultivated the land where the whisky was found for 1926, and as shown by the owner of the land was not in possession of anything but the house and its surroundings, and was only hired for the purpose of helping the land-owner gather the cotton crop.

There are many questions raised by the defendant as to why this conviction should be reversed, but the only one that is necessary to be mentioned is defendant's assignment 4, "That the court erred in overruling the motion of the defendant to return a verdict of not guilty." This court has repeatedly held that where there is any com-

petent evidence to go to the jury, though conflicting, it would not disturb the verdict of the jury. In Ren et al. v. State, 9 Okla. Cr. 671, 132 Pac. 1131, this court said:

"To justify or sustain a conviction of having possession of intoxicating liquor with intent to violate any of the provisions of the prohibitory law, there must be evidence sufficient to prove possession, and also evidence of the criminal intent. When a verdict is manifestly contrary to the evidence, this court has no discretion, but must reverse the judgment."

From a careful examination of the testimony in this case we fail to find any testimony that tends in any way whatever to connect the defendant with the possession of the whisky. The testimony in this case does not even amount to a strong suspicion of the defendant's guilt. The whisky was alleged to have been found about 250 to 300 yards from the house in which the defendant was living. Defendant may be guilty, but we hold that the testimony in this case falls far short of the requirement of the law necessary to sustain a conviction.

The judgment is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.