## R. C. BENSON v. STATE.

No. A-1654.   Opinion Filed July 8, 1913.

(133 Pac. 271.)

**INTOXICATING LIQUORS — Appeal — Verdict—Evidence—Sufficiency.**
While it is well settled that this court will not disturb the verdict on account of the evidence when there is evidence to support it, the converse rule is equally well settled that it is not only the province, but the duty, of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence, to which every one is entitled who is put upon his trial for an offense. (See opinion for evidence held insufficient to support the verdict and judgment.)

*Appeal from County Court, Murray County;*
*Harry W. Fielding, Judge.*

R. C. Benson was convicted of violating the prohibition law, and appeals. Reversed.

*Kendrick, Davis & Smith,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen. (*Herbert M. Peck,* of counsel), for the State.

DOYLE, J.  Plaintiff in error, R. C. Benson, was convicted in the county court of Murray county. On the 8th day of February, 1912, judgment was entered, and he was sentenced to be imprisoned for 60 days in the county jail and to pay a fine of $100. From the judgment he prosecutes this appeal.

The record shows that on November 29, 1911, G. E. Mook made complaint before G. P. Dickinson, justice of the peace in and for the town of Davis in said county, against R. C. Benson, charging the said Benson with the crime of selling spirituous liquor on the 26th, 27th, and 28th days of November. Upon said complaint the justice issued a warrant for said Benson. He was arrested and immediately gave bond for his appearance before the county court. On December 2d the justice filed with the clerk of the county court a transcript of the proceedings. On January 31, 1912, an information was filed in the county court, charging that R. C. Benson did on or about the 26th day of November unlawfully sell, barter, give away, and otherwise furnish spirituous liquor, to wit, whisky and alcohol, to Ed. Grayson, contrary to, etc. Which information was signed, "E. W. Fagan, County Attorney, by Ira M. Roberts, Assisting County Attorney," and the same was verified by Ira M. Roberts. Trial was had on February 5th on the said information which resulted in a verdict of guilty.

Ed. Grayson, the first witness for the state, testified that he lived at Davis, and was acquainted with the defendant. His testimony as shown by the transcript is then as follows:

"Q. Do you remember going with Mr. Mook down to the house of R. C. Benson? A. Yes, sir. Q. State when that occurred? A. He said he didn't have anything; said possibly he would have in some, or something like that; don't remember; quite a while ago; but I went down to get some, and he didn't have it. I did this on his account. Q. Tell the jury if on or about the 26th day of November, 1911, don't care about the exact date just so within a year, did you see Mr. Benson personally, and

did he furnish you any whisky or alcohol in any amount? A. I have told the jury all I know about the whisky I bought. Q. Answer the question. A. No. Q. About that time, did Mr. Benson give you a drink of alcohol? A. He gave me a drink of alcohol. I suppose it was him; at that time I didn't know him, until some time ago. And one night he gave me a drink of alcohol out of a bottle. It must have been in July, somewhere along there; don't remember what time it was, but quite a while ago. He gave me a drink one night. Q. Did you pay him for that, or did he just give it to you? A. Didn't pay him for it. Q. Did he give it to you? A. Yes, sir. Q. In Murray county, state of Oklahoma? A. Yes, sir. Q. About what day? A. Couldn't tell you to save my life—two or three months before Christmas—July or August. Q. 1911? A. Yes, sir."

Cross-examination:

"Q. You say in the month of July Curley gave you a drink of alcohol? A. Don't remember whether it was July or August. It was several months ago in the summer. Q. Did you know it was alcohol? A. It tasted like it to me. Q. You don't know it was alcohol? A. No, sir; only tasted it."

G. E. Mook testified that he was a deputy sheriff and knew the defendant for several months; that during that time he was a restaurant cook. He then stated:

"I had information brought to me from certain parties that the defendant was selling whisky, and I tried to catch him, tried most every way I could think of, and I got after Mr. Grayson. He had a drink or two, and I was satisfied was wanting more whisky, and I says to him, 'I will lay out in the dark.' At that time Mr. Benson was boarding at Bus Caton's house, west of the railroad track, and I says, 'Will lay out in the grass where I can hear the conversation and see the transaction between you and the defendant, and he won't know I am there.' So he went up, and this night the defendant seemed to be under the influence of whisky pretty strong, and he had to talk very rough to him to get him woke up, so he asked him if he had any whisky or alcohol, and he said he didn't, but would have some in tomorrow. We walked back up town, and that is about all to it."

On cross-examination he stated:

"I don't remember the date, I judge it to be along in August or September, something like sixty days before I made the complaint."

The state rested. Thereupon the defendant demurred to the evidence and moved to be discharged, which was overruled by the court, and exception allowed.

R. C. Benson, the defendant, as a witness in his own behalf testified that he was a cook in a city cafe at Davis; that he did not give witness Grayson a drink of whisky or alcohol in the month of July or of August, or at any other time; that he was confined in the county jail of Murray county during the months of July and August and was released some time in September; that some time in November Grayson came to where he was boarding and woke him up and asked him for whisky, but he did not give him any. On cross-examination he stated that he was in jail for carrying beer across the street.

This was all the evidence in the case. The only question of moment presented is the sufficiency of the evidence to support the verdict and judgment.

It is well settled that this court will not disturb the verdict on account of the evidence when there is evidence to support it. The converse rule is equally well settled that it is not only the province but the duty of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it.

Section 5937, Rev. Laws 1910, Procedure Criminal, provides that a new trial shall be granted "when the verdict is contrary to law or evidence." Under this provision the responsibility of determining whether or not there has been adduced before the jury a sufficient amount of legal and competent evidence to render it safe to allow the verdict to stand is imposed upon the trial court in the first instance and on appeal upon this court.

The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence to which every one is entitled who is put upon his trial for an offense.

We are of opinion that the verdict and judgment in this case is clearly contrary to the evidence, and that the trial court erred in refusing to advise the jury to acquit the defendant.

We have fully set forth the proceedings with a view of illustrating the necessity of an observance of proper procedure in cases of this kind. The justice of the peace had no jurisdiction to entertain a complaint charging an unlawful sale of intoxicating liquor, and the evident purpose of such procedure was to create claims for official fees.

The information recites that the county attorney's name was signed by an "assisting" county attorney. Our Procedure Criminal (section 5694, Rev. Laws 1910) provides that:

"The county attorney shall subscribe his name to informations filed in the county, superior or district court."

And section 1563, Rev. Laws 1910, provides that:

"In all counties having a population of not over twenty-five thousand the board of county commissioners may, in their discretion, allow one assistant county attorney."

The information here shows that the county attorney's name was signed by an "assisting" county attorney. No doubt a county attorney may employ assistants in various ways not involving official discretion or responsibility, but he cannot authorize his name to be signed to informations by a person other than his duly appointed and qualified assistant. The law has carefully guarded the administration of public justice from any interested or unauthorized intermeddling. It may be that the attorney who signed the information as "assisting" county attorney was the "assistant" county attorney. However, the proper practice is that the assistant county attorney should designate his office by using the statutory words.

Because the verdict is contrary to the evidence, the judgment is reversed.

ARMSTRONG, P. J., and FURMAN, J., concur.