F. G. HEATH v. STATE.

No. A-8429.  Oct. 14, 1932.
Rehearing Denied Jan. 6, 1933.
(17 Pac. [2d] 527.)

Bailey & Hammerly, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.  Plaintiff in error, hereinafter called defendant, was convicted in the county court of Grady

county of the crime of unlawful possession of intoxicating liquor, and his punishment fixed by the jury at a fine of $200 and imprisonment in the county jail for 60 days.

The evidence of the state was that certain officers in Grady county had a search warrant to search the residence of defendant, and upon such search found six gallons of whisky and a gallon and a half of wine in some containers in a pantry; that under the trapdoor in this pantry was a place dug out in the ground about two and one-half feet square and three feet deep; that this plant had marks on it made by depositing a keg or kegs therein; in an outbuilding there was also found a large quantity of empty jars.

Defendant, testifying for himself, admitted that he made the wine, but denied any knowledge of the whisky; that the sheriff asked him if that was all the whisky there was there, and he said as far as he knew it was; that, if he told the sheriff it was his whisky, he did not remember.

Defendant contends, first, that the case should be reversed because it appears that the affidavit for search warrant was taken by the county judge at his residence and the warrant issued there, rather than at the judge's office in the courthouse, and filed with the court clerk on the next day.

The county judge in the issuance of the search warrant was acting as a magistrate. When the affidavit was made and deposited with him, it amounted to and was a sufficient filing.

It is undisputed that the affidavit was made before the county judge acting as a magistrate, and the warrant issued thereon. The better practice would be to take the affidavit and issue the warrant from the office of the

magistrate. The Constitution and statute is mandatory that an affidavit shall be made or evidence offered sufficient for the magistrate to find probable cause, and that a proper warrant be issued thereon. Nothing is said about where this affidavit shall be taken nor the warrant issued. The taking of the affidavit and the issuance of the warrant by the magistrate at his residence was an irregularity which did not go to the sufficiency of the affidavit or warrant, and does not require a reversal of the case.

It is next contended that the affidavit is insufficient to authorize the magistrate to find probable cause, or issue a warrant thereon.

Defendant relies upon Hannan v. State, 29 Okla. Cr. 203, 233 Pac. 249, and the authorities cited therein to support this contention.

In Smith v. State, 30 Okla. Cr. 144, 235 Pac. 273, 274, this court had under consideration the question passed on in Hannan v. State, supra, and there said:

"Whether an affidavit for a search warrant states evidential facts or mere conclusions is sometimes difficult to determine. In this regard it seems to us that the affidavit in the Hannan Case is on one edge of the twilight zone, and the affidavit here under consideration is on the other edge. It will be observed that the affidavit in the Hannan Case did not state that 'John Doe' was a fictitious name, or that the real name of 'John Doe' was unknown to the affiant. The affidavit did not describe or designate the kind of liquor. The statement that 'intoxicating liquors are being kept' was a mere indefinite conclusion. The allegation that this undescribed person had this undescribed liquor for the purpose of illegal sale was likewise a conclusion. Neither did the affidavit state that the place described was occupied as a private residence and was a place of public resort, as required by section 7013,

Comp. Stat. 1921. Now let us see how the affidavit in the case here under consideration differs from the one in the Hannan Case. The affidavit in the instant case shows that 'John Doe' was a fictitious name, and that the offender's real name was unknown to affiant. It also states that the place described was a place of public resort, the fifth house (presumably a residence) east of the coal chute, and that it was a place where wine, beer, and whisky were being kept. All these statements, considered together, reasonably implied that the liquor described was being kept for an illegal purpose. * * *

"The two affidavits differ materially in three vital particulars: First, in naming and describing the person; second, in naming and describing the intoxicating liquors; and, third, in describing the character of the place where the liquors were being kept. In the Hannan Case nothing is stated but naked conclusions; in the instant case there are some facts stated designating the person in possession, the kind of liquor, and character of the place where it was being kept."

See, also, Roe v. State, 32 Okla. Cr. 113, 240 Pac. 140; Shanafelt v. State, 38 Okla. Cr. 345, 261 Pac. 380; Dobbs v. State, 39 Okla. Cr. 376, 265 Pac. 658; Hayes v. State, 41 Okla. Cr. 302, 274 Pac. 41; Jay v. State, 42 Okla. Cr. 32, 274 Pac. 487.

In the case at bar, the affidavit is almost in the identical language of Smith v. State, and was sufficient to authorize the issuance and service of the search warrant.

Defendant argues that his case is different from the ordinary liquor case, because he kept the wine for his father and occasionally gave a social drink of the same to a neighbor who dropped in.

It is not necessary to pass upon this question. This is a simple case where the defendant had concealed in his residence a large amount of whisky and some wine. It

was the province of the jury to determine from the evidence whether he had these liquors there for sale. They evidently did not believe his explanation, since they found against him.

No fundamental error appearing upon the record, and the evidence being sufficient to support the verdict of the jury, the cause is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.