## GARNETT SEVERE v. STATE.

No. A-9339.   March 4, 1938.

(77 P. 2d 116.)

54

A. J. Stevens, of Alva, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, referred to in this opinion as the defendant, was by information charged with intent to carry, convey, and transport intoxicating liquors; was convicted and sentenced to 60 days' imprisonment in the county jail and a fine of $50 and cost of the action. From the judgment and sentence of the court the defendant appeals.

The testimony on behalf of the state of Nels Nelson and Ken W. Greer in substance shows that Greer and Nelson for some reason suspicioned the defendant was going to be coming to his home with intoxicating liquors; they drove their car down the road where they expected the defendant to pass and parked and turned the lights out and were sitting in the car when another car came toward their car going in the opposite direction. The driver of the car hesitated and then put on his motor power and did not stop for the officers, but drove very close to the officers' car, and the sheriff and deputy claim the defendant was the man in the car that raced past them, and identified the defendant as the man driving the car.

They further stated they turned their car as soon as they could and followed up the road in the direction the car that passed them was going; after driving some distance up the road they lost track of the car and turned and came back to a wheat field, and there discovered on the frost a car had driven out into the field; they followed these tracks and found a large quantity of whisky; later on that night they went to defendant's home and inquired for the defendant and received word from the defendant's wife or some one who was there with her that the defendant had left that afternoon to go to Enid.

Neither of the officers claim to have seen the defendant in possession of the whisky; the only evidence tending to connect the defendant with the whisky is that the officers claim they found it in a wheat field; that as the defendant hurriedly drove by them they recognized him as the driver of the car; they did not see the defendant turn into the wheat field, or go out to where they claim they found the whisky; they saw the fresh tracks on the frost on the ground, which they followed to where they found the whisky. The foregoing was the substance of the testimony offered by the state.

The defendant at the close of the testimony demurred to the evidence of the state, "for the reason that it wholly failed to prove by competent evidence that Garnett Severe ever had any liquor in his possession; or that there was any liquor transported by him; or that he had anything to do with any liquor, and has wholly failed to prove any of the allegations of the information."

The defendant, Garnett Severe, testifying in his own behalf stated:

"In January, 1937, I was living a half mile south and four miles west of Alva, four miles and a half south of Hopeton, on the east side of the road; on the night of January 25, 1937, I was at Enid, Oklahoma; it was a rather cold day with sleet and frost on the ground and lots of ice. I

started on my way to Enid about 3 o'clock on Monday, January 25, 1937, went from my place to Carman, and stopped and picked up my wife's uncle, Dennis Shockley, and drove to Enid, reaching there about 6 o'clock; after I had been in Enid a while we went to the Oak Rooms and asked for a room but we did not register that time; Mr. Shockley was with me, we ate our supper at the E and J Cafe on East Randolph, a block north and east of the court house; Bob Weaver was cook and I had known him five years, after we ate our supper we drove out to the Weaver home, he lived about a mile from the cafe; Mr. Shockley went with us and we remained until about 10:30 visiting; his wife was sick and when we left Mr. Weaver went with us to town to get his wife some medicine; he wanted to walk back home but I told him to take the car home with him and drive it down the next morning; we were within a block of the Oak Rooms; I did not see Mr. Weaver any more until about 8 o'clock the next morning. Mrs. Letha Staker runs the Oak Rooms; I registered for myself and Mr. Shockley, January 25th, 1937; the day of the week was Monday; Mr. Shockley and I slept together that night.

"I did not meet Mr. Nelson and Mr. Greer in the road the night they testified I passed them, nor did I see them the next day. I ate my breakfast at the Silver Moon restaurant in Enid; Weaver was with us as he did not go to work until 12 o'clock noon; Mr. Shockley was with me all the time; on January 26, 1937, between 2 and 3 o'clock in the afternoon we started home, and went straight to Dennis Shockley's home; we went through Cleo and up that way; I got home about sun down, almost dark. When I got home my wife and Ira Drumheller was there; I was not at home the night of January 25th, and was not there until almost dark the next evening; I was not in any field the night of January 25, 1937; I had been there several days prior to that time for the purpose of rounding up cattle in the wheat field that belonged to Mr. Zipp, I think; I was not in the neighborhood where the witnesses testified I passed them the night of January 25, 1937, nor was I there on the morning of the 26th; I had not run into Nels Nelson's car. The officers arrested me the morning of the 11th of February as I was returning from Arkansas; at Carman; I went to Arkansas with my wife, my sister, her daughter and baby; my wife returned before I did with some other parties; I was

at my home from January 26, 1937, until February 2, 1937; at no time did I hide from the officers."

Letha Staker, who runs the Oak Rooms, testifying for the defendant, stated the defendant and Dennie Shockley came to her rooming house the evening of January 25, 1937, and presents her register which shows they registered in room 13, and spent the night there; that the register was just as it was at that time.

Robert Weaver and his wife testified as to the defendant coming to the cafe where he was cooking, and then going to the Weaver home and spending quite a while with them, and letting Weaver drive the defendant's car to his home and returning it the next morning.

Dennis Shockley corroborated the testimony of the defendant coming to his house and going to Enid with him on the 25th day of January, 1937, eating supper with him in Enid, going to the Weaver home and back to the Oak Rooms, where he says he and the defendant spent the night, and came home the afternoon or evening of January 26, 1937.

Mrs. Garnett Severe, wife of the defendant, stated where they were living in January, 1937; that they had a number of cattle and pastured them across the road from their house; she had often driven the cattle off the wheat field where the state witnesses claim they found whisky; that she helped her husband round the cattle up; that she often went on horseback. Witness further stated the night of January 25, 1937, a sheriff or deputy, or both of them, came to her home and asked where her husband was, and she informed them he had left that afternoon for Enid, intending to go by and pick up Dennis Shockley, and that they were in Enid so far as she knew. The officers came a second time that night to try and find her husband, the defendant.

Ira Drumheller corroborated Mrs. Severe as to the officers coming to the house and inquiring about the defendant and was advised by his wife he had gone to Enid.

Letha Davison testified she was a sister of the defendant; that the defendant went with her to Arkansas; leaving the 3d of February, 1937:

"I had to be there on the 4th, and the defendant went with me to the court house at Waldron, Arkansas; his wife, my daughter and my baby went with us. Garnett helped my uncle set out a number of fruit trees on his farm in Arkansas before he returned."

A number of witnesses testified as to the previous good character of the defendant.

On rebuttal, Ken W. Greer, the sheriff, testified he saw the defendant south of Waynoka on January 25, 1937; also testified as to the condition of the weather Wednesday, and on up until January 28, 1937.

Nels Nelson, in rebuttal, testified he saw the defendant on the afternoon or evening of January 25, 1937, on the highway south of Waynoka; witness was positive he recognized the defendant, but that he did not stop him and talk with him the afternoon as testified to by Nelson.

The defendant, called in surrebuttal, stated:

"I heard what the sheriff and deputy sheriff stated about seeing me south of Waynoka on the 25th; I was not on that highway the afternoon of the 25th, and I did not see them down there; I was in Enid or on my way to Enid as stated in my direct examination."

Five errors have been assigned by the defendant as grounds for reversal of this case:

"1.  That the verdict is contrary to law.

"2.  That the verdict is contrary to, and not supported by the evidence.

"3. That the court erred in permitting the plaintiff, over the objections and exceptions of the defendant, to introduce incompetent evidence prejudicial to the rights of the defendant.

"4. That the court erred in refusing to permit the defendant, over his objections and exceptions to introduce legally competent and proper evidence in support of his defense.

"5. That the court permitted errors of law at the trial of said cause, over the objections and exceptions of the defendant."

The errors assigned by the defendant will all be considered under one heading, and that is, Is there sufficient testimony to sustain the verdict of the jury? In order to properly consider the testimony introduced and ascertain whether or not the evidence is sufficient to overcome the presumption of innocence that follows the defendant throughout the trial, it is necessary to consider the testimony of the state. Neither of the witnesses saw any whisky in possession of the defendant. Neither of them saw him unload the whisky in the wheat field where they claim they found it. Neither of them saw him going in or coming out of the wheat field. The testimony wholly fails to connect the defendant with the whisky found by the state witnesses in the wheat field. The only testimony on behalf of the state that tends to connect the defendant with the whisky is the testimony of the state witnesses who were in the car on the road when the car drove up and they switched on their lights, and the car drove up close by their car, and they claim they recognized the defendant as the driver of the car, notwithstanding the windows of both cars were closed at the time and it was a cold night. The state did not introduce any evidence showing that the defendant was or had been engaged in the whisky business.

The defendant by his witnesses shows that on the night of January 25, 1937, the officer, one or both of them, came to his home twice to ascertain whether or not the defendant

was at home; the first time they came to the home of the defendant they were advised by the wife of the defendant and other parties there that the defendant had left that afternoon stating he was going to Enid.

The defendant testifying in his own behalf stated he did go to Enid, and in going to Enid he went by the home of his wife's uncle, Dennis Shockley, who joined him, and they went to Enid, reaching there about 6 o'clock that evening.

After spending some time in Enid, they drove down to the E & J Cafe, where a man named Weaver was a cook; Weaver and the defendant had been acquaintances for more than five years; Shockley and the defendant ate their supper at the cafe, and when Weaver got off from work they got in defendant's car and drove out to the Weaver's home. Weaver and his wife both testify to this fact. Later in the evening the defendant, Shockley, and Weaver drove back to the business part of the city, and Weaver drove defendant's car back to his home and kept it that night.

Letha Staker, who runs the Oak Rooms in the city of Enid, testified the defendant and Shockley came to her rooming house and registered in and were assigned to room 13; they left a call for 7 o'clock the next morning, and both Shockley and defendant occupied room 13. Mrs. Staker presented her register showing that Dennis Shockley and Garnett Severe registered with her on January 25, 1937, and were assigned room 13. The defendant and Shockley both testify they left Enid some time the afternoon of January 26, 1937, and the defendant stated he reached home about dark that day.

In Tislow v. State, 36 Okla. Cr. 346, 254 P. 511, in the first paragraph of the syllabus this court stated:

"While it is well settled that this court will not disturb a verdict on account of the evidence where there is evidence to support it, the converse rule is equally well settled that

it is not only the province but the duty of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it."

In Jefferson v. State, 31 Okla. Cr. 44, 236 P. 914, in the body of the opinion the court said:

"The salutary rule, as has frequently been announced by this court, is that the jury are the exclusive judges of the credibility of the witnesses, and where there is evidence from which the jury may reasonably and logically draw the conclusion of the defendant's guilt, although the evidence is conflicting, the verdict will not be disturbed. Still, where there is a dearth of evidence and the guilt of an accused is not a logical deduction from the facts proven, the evidence is insufficient and the verdict will be set aside. Benson v. State, 10 Okla. Cr. 16, 133 P. 271; Owens v. State, 11 Okla. Cr. 113, 143 P. 204; Ren v. State, 9 Okla. Cr. 671, 132 P. 1131."

Under the statutes of Oklahoma the defendant is presumed to be innocent until his guilt has been established by competent evidence beyond a reasonable doubt, and that presumption follows the defendant throughout the trial until overcome by competent evidence sufficient to convince a jury beyond a reasonable doubt of his guilt.

Is the testimony in this case sufficient to overcome the presumption of innocence guaranteed to the defendant; the undisputed evidence of the defendant showing at the time the state claims they saw the defendant on the road he was at another and different place? The state made no effort to impeach the witnesses testifying the defendant was in Enid the night the state witnesses claim they saw him on the highway and he passed them in his car; were the state witnesses mistaken as to the identity of the defendant, or are all the witnesses who testify for the defendant mistaken?

There is no competent evidence in the record to show the defendant was connected with the whisky alleged to have been found in the wheat field by the state witnesses after they claim he drove by them on the highway.

It is well settled that this court will not disturb the verdict on account of the evidence where there is evidence to support it. The converse rule is equally well settled that it is not only the province but the duty of the court to set aside the verdict when it is contrary to the evidence, or there is no competent evidence to support it. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence to which every one is entitled who is put upon trial for an offense.

After a careful consideration of the evidence, we hold that the state's evidence has wholly failed to overcome that presumption of innocence to which the defendant is entitled, and of his evidence of being at another and different place on the night the state witnesses claim to have seen him on the highway a short distance from his home.

There being no competent evidence to sustain the conviction, the judgment of the trial court is reversed.

DOYLE and BAREFOOT, JJ., concur.