### EFFIE HILL v. STATE.

No. A-10168.    April 28, 1943.

(137 P. 2d 261.)

372

Fred E. LaRue, of Clinton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for the State.

PER CURIAM. On information charging that on th 24th day of January, 1941, she did unlawfully have in her possession ten and one half pints of whisky, with the intention of selling the same, Effie Hill, appellant, was tried, the jury returned a verdict, as follows:

"We, the jury do upon our oaths find the defendant, Effie Hill, guilty, but are unable to agree upon the punishment."

Motion for new trial was duly filed; on August 30, 1941, said motion for new trial was overruled, exceptions allowed. Thereupon the court entered judgment and sentenced the defendant, Effie Hill, "to be confined at hard labor in the county jail of Custer county for a term

of thirty days and to pay a fine of one hundred dollars and the costs of this prosecution."

To reverse the judgment the defendant perfected an appeal by filing in this court on October 29, 1941, a petition in error with case-made.

The grounds of the motion for new trial and assigned as error in the petition are in effect as follows: That the court erred in admitting incompetent and irrelevant evidence on the part of the state to which the defendant excepted; remarks of the court during the progress of the trial, which were prejudicial to the rights of the defendant; that the court erred in refusing to instruct the jury not to consider improper remarks of the county attorney, that the verdict is not sustained by sufficient evidence and is contrary to law, and that the court erred in overruling the defendant's motion for new trial.

The state relied for this conviction upon the testimony of two witnesses.

J. E. Murphy, deputy sheriff, testified that with Sheriff Stambaugh, Constable Bill Clark, and County Attorney G. C. Loving, he went to Effie Hill's place in Weatherford to make a search for liquor. Handed a paper he stated: "This is a search warrant, a copy of which we used to make the search;" that it was handed to him by W. W. Shelley, justice of the peace at Weatherford, and he searched Effie Hill's place on it; that he found two bottles containing liquor in Effie Hill's house, in the kitchen, on the cabinet; outside of the house in the yard he found another bottle containing liquor, and the three bottles contained approximately a quart of liquor; that the three bottles were found in the premises covered by the description on that search warrant. The record further shows:

"By Mr. Mitchell: We offer the search warrant in evidence for any purpose it might want to serve. The defendant objects: By the Court: Overruled. Let it be marked State's Exhibit No. 1. Exception allowed."

The description in the search warrant is as follows:

"That said liquor was being disposed of and kept in the manner aforesaid by one Effie Hill at and in the residence, other buildings, and structures within the curtilage of said residence, and appurtenances thereto, and all automobiles and other vehicles, situated in and upon the real estate located in Custer County, State of Oklahoma, described as follows, to-wit:

" 'Lots 1 and 2, in Block 108, original town of Weatherford, Custer County, State of Oklahoma, as shown by the recorded plat thereof, and that said premises is a place of public resort,' and

"Whereas, I find that probable cause exists for said complaint and issuance of this warrant for the reasons stated in said affidavit."

The endorsements on said warrant are as follows:

"Received this Search Warrant January 24, 1941, and as ordered therein, made a diligent search of the within described premises on January 24, 1941, and found three pint bottles, containing altogether about two pints of alcoholic liquor.

"Everett Stambaugh, Sheriff
"By J. E. Murphy, Deputy.
"Filed Aug. 25, 1941."

"By Mr. LaRue: We object to the affidavit as incompetent, irrelevant and immaterial. By the Court: Let the objection be sustained as to the affidavit and remove the affidavit from the files and mark the rest of it as State's Exhibit No. 1. By Mr. Mitchell: We offer State's Exhibit No. 2 in evidence. By Mr. LaRue: No objection. By the Court: State's exhibit number two will be admitted in evidence. They are three bottles of liquor each

about half full, containing about one quart of liquor."

The record further shows:

"Q. Mr. Murphy, are you familiar with the premises described in this search warrant as to whether or not this place, or premises, are a place of public resort? By Mr. LaRue: We object to that question for the reason it is incompetent, irrelevant and immaterial, and calling for a conclusion of the witness. By the Court: Tell what the facts are but not your conclusion about it."

He was then asked seven or eight similar questions, to each of which defendant's objections were sustained by the court.

The record shows his last question and answer are as follows:

"Q. Mr. Murphy, testify who you saw around the premises in question, around the 24th day of January, this year Objection overruled Exception allowed. A. Well, I saw the officers that were with me, and Effie Hill and another negro woman there, but I can't be certain of that, at that time. That is all I remember."

Everett Stambaugh, sheriff of Custer county, testified, that in company with Mr. Murphy, and some of the Weatherford officials, and Mr. Loving, county attorney, in executing a search warrant directed to the property on which Effie Hill lives, Mr. Murphy carrying the warrant, they went to the place described, that he did not find anything on Effie Hill's premises himself, but made some further investigation and looked on the south side of the house and around the garage, and in the cave and hen house "that he discovered some tracks leading south."

Defendant's objection overruled.

He further testified: "I followed them out south to the fence and over the fence into a little pasture in a wash in some kind of tin boiler or something, there was

seven pints and three half pints of liquor in a sack."

Motion to strike witness's testimony overruled. Exception allowed.

"By the Court: Let the record show that state's exhibit number three consists of seven full pint bottles and three half pint bottles."

He was then asked:

"Q. Where did you first notice these tracks you testified to? Defendant's objection overruled. Just out in the yard, the house faces the east end outside leading down the path, it is a street but it is not opened. They were just off this property that we were searching. They lead to the end of the street and there was a fence there and the whisky was over the fence in the pasture."

Defendant's objection overruled:

"By the Court: I would like to know where he found the tracks. What we want to find out from this witness is where the tracks were with reference to the property of the defendant. I can't see anything questionable about this question. Q. Everett, tell us where you found the tracks with reference to the house in which Effie Hill lives? A. Well, I didn't measure it, but I would judge 10 or 15 feet southeast of the front porch. Q. What kind of track was it? A. A woman's track. Q. Then where did you go from there? A. I went south to the fence, and clumb over the fence. Q. Why did you go south? A. Because I have found liquor there before, not in the same spot but near there. By Mr. Mitchell: We offer state's exhibit No. 3 in evidence. By Mr. LaRue: To which the defendant objects for the reason it is incompetent, irrelevant and immaterial, and it is not shown that this defendant had anything to do with this liquor or was in any way connected with it whatsoever, and for the further reason it has not been shown where the liquor was found with reference to the defendant's property, how far it was away from it. By the Court: Over-

ruled. State's exhibit No. 3 will be admitted in evidence. Exceptions taken."

Cross-examination by Mr. LaRue:

"Q. Everett, how far was it from this fence to where you found this liquor? A. I would say from where I am to the back of the courtroom there, I might be off a little but that would be my best judgment. By the Court: Let your records show it is about 75 feet. Q. Now, is there a house directly across the street from this defendant's property? A. Not directly, I don't think. Q. There is one across the street? A. Yes, sir. Q. Do you know if anyone lives there or not? A. I think there is, but I don't know who. Q. That is in the colored settlement, and there are several houses around there. A. Yes. Q. There are three in that particular vicinity? A. Yes, sir. Q. Anybody going down toward the creek could come down that street, climb over the fence and go down to the creek where you found the liquor? A. They could."

On redirect examination by Mr. Mitchell, assistant county attorney, he testified over defendant's objections:

"I have on other occasions been in the neighborhood of this property, I would say a week previous to the time we raided her property, I could not say for sure the exact date, I was just scouting around, I saw cars and people going to and from this particular place, the home of Effie Hill. I would not swear who the people were, I could not determine whether they were colored or white, I thought they were both, but I would not be positive, I could not call any other date. By the Court: Objection overruled. Common usage over a period of time would make it a public resort. By Mr. LaRue: He has to fix the time. By the Court: He fixes it within the period. By Mr. LaRue: He said not too long, it might have been three years or it might have been even longer. By the Court: Overruled. Exception allowed. By Mr. Loving: Was this at night or in the day time? A. Nighttime. Objection overruled. Exceptions. Q. Mr. Stambaugh, have you had occasion to observe this place at

any other time? A. Well, I observe places that I think was in the liquor business every once in a while. By Mr. LaRue: We move the answer be stricken and the jury admonished not to consider the answer. By the Court: Gentlemen of the Jury, you are admonished not to consider the question or the answer, try this law suit on the evidence. By Mr. Mitchell. Exception. Q. Mr. Stambaugh, on this first occasion where were you located from the defendant's property that you observed? A. I was south. Q. How far south? A. Approximately a half of a mile. Q. How were you observing the defendant's property? A. Through field glasses."

On cross-examination he stated that Effie Hill's house, the front porch is pretty close to the lot line of the street.

"Q. Then these tracks that you talk about were out in the street, weren't they? A. I wouldn't say, I don't know where the line was? Q. Everett, do you know whose property this exhibit, these eight and one-half pints of whisky were found on? A. I do not. Q. Which side of this street, if the street went on south, which side of the street would that whisky be on, which side of the street, the east side or west side? A. I could not tell you, I don't know where the center of the street is there. My best judgment would be about twenty five feet east of the house and one hundred and seventy-five feet south, to where I found the whisky. By Mr. Loving: The state rests. By Mr. LaRue: Comes now the defendant and moves the court to direct the jury to return a verdict of not guilty for the reason that the evidence is wholly insufficient to show that this defendant is guilty of the offense charged in the information. By the Court: I will deny the motion. By Mr. LaRue: Exception."

As a witness in her own behalf, Effie Hill testified:

"I live on South State street, in Weatherford, on the 24th of January, Sheriff Stambaugh and some other parties, searched my place, Mr. Murphy got a half pint and a piece of a pint of alcohol in my cabinet, and some

tall man that was standing around the house looked down at the corner of the house, and he says 'Look there,' and he kicked a bottle and I said, 'What is it?' He smelled of it, and says, 'It is water and alcohol mixed'; and that is all they found, that half pint and pint on my cabinet. I do not know anything about the bottle they found outside, that the liquor they said they found out in the pasture was not her liquor, that she never had anything to do with that, and did not know anything about it, until they came up with it, that when she saw the sheriff go off down in the pasture he walked over across the street, and said he saw a track that went over the fence, and where he found it was good deal further than that church over there, that she don't know whose liquor it was or is, that the county attorney was there and he said, 'Effie, we have to find a quart or we can't prosecute you,' and I said, 'Help yourself,' and we just put our things back in the cabinet."

On cross-examination she testified that a bunch of women, we call the Rotary Club, meet from house to house every Thursday, and get together to have a little fun, and get eggs and make eggnog, and she had that in the house to use it, that the bottle that was near the house was not found by Jim Murphy, it was another fellow that had on a white hat, Mr. Murphy wanted her to unlock the cellar door and when she unlocked it she saw this old man standing there looking down at a bottle, he smelled the bottle and says, "it is water and alcohol mixed."

That she had lived in this house, her home for the past thirteen years, and her son, four years old, lives with her.

The case-made covers about 100 pages, and the foregoing is a substantial statement of the testimony.

Both parties rested and the defendant again moved the court to direct the jury to return a verdict of not

guilty, for the reason there is no evidence that the whisky found out in the pasture was her whisky, and there is no evidence to connect her with it, it was therefore incompetent and should be stricken from the record.

For the further reason that the whisky found on the premises of the defendant, is less than a quart and therefore not prima facie evidence of possession with intent to sell.

Objections overruled and exceptions allowed.

The record shows that counsel for the defendant objected to the following statement made by G. C. Loving, county attorney, in his closing argument to the jury:

"That the people who go down there go for only one purpose and that is for the purpose of purchasing whisky from the defendant Effie Hill. By Mr. LaRue: The reason we object to it is that there is no testimony on which a statement of that kind can be based, and no evidence from which a conclusion can be drawn. By the Court: Overruled. By Mr. LaRue: Exceptions. By the Court: Mr. LaRue; you must follow the procedure of law and the rules of this court. By Mr. LaRue: I know how to do that. By the Court: I am not going to let you make an argument like you have just made here. By Mr. LaRue: I am going to object to any statement that is prejudicial to my client. By the Court: You are not going to heckle the county attorney as he makes his argument. By Mr. LaRue: We object to the statement of the court. By the Court: Let your record show the objection."

In the course of his argument, the county attorney also stated:

"Gentlemen, what are you going to do with the defendant over there in the liquor business. Are we going to continue to let her operate. Where people can go and buy liquor. By Mr. LaRue: We object to the county attorney statement that she is over there in the liquor busi-

ness. By the Court: That is argument, gentlemen of the jury, you will decide this case on the evidence submitted to you."

The record shows the following closing statement by the county attorney:

"I think, gentlemen, if you want her to stop bootlegging in Custer county, I would suggest that you give her six months in the county jail and a one hundred dollar fine, and that is what I trust you will be able to do in this case."

A consideration of the foregoing record leads to the conclusion that the judgment in this case cannot be permitted to stand. It is evident that the defendant did not have a fair trial. A fair trial is a legal trial, or one conducted in all material things in substantial conformity to the law. An unfair trial, especially in a criminal case, is a reproach to the administration of public justice. And in this case, there seems to have been a careless disregard of the legal rights of the defendant.

The only competent testimony which in any manner tends to support the verdict was that two pint bottles, each about half full of liquor, were found in the kitchen of the defendant's house, and a pint bottle found outside in the yard, containing a small amount of liquor.

Deputy sheriff Murphy testified that "The three bottles contained approximately a quart of liquor."

The record shows the court stated when "Exhibit No. 2" was offered in evidence: "State's Exhibit No. 2 will be admitted in evidence. They are three bottles of liquor, each about half full, containing about one quart of liquor."

It will be observed that the return on the search warrant is: "And found three pint bottles, containing altogether about two pints of alcoholic liquor."

The statute (37 O. S. 1941 § 82, Laws of 1933, ch. 153, p. 339, § 3) provides that the keeping in excess of one quart of intoxicating liquor, "shall be prima facie evidence of an intention to convey, sell or otherwise dispose of such liquors."

As defined by Webster, "Approximate" is "To bring near, cause to approach" and "Approximation" is "an approach to a correct estimate."

Obviously, the amount found on the premises described in the warrant was not in excess of one quart of intoxicating liquor.

That the court erred in admitting the intoxicating liquor found in the pasture cannot be doubted. There should be some proof that the defendant was in possession of the intoxicating liquor found in the pasture or such circumstances from which it may be reasonably and logically inferred, such as proof of the ownership, or control of the land where it was found, or such connection with it that it can be said that there is proof of possession. The evidence fails to show that the pasture was in the possession or under the control of the defendant, or that the intoxicating liquor was hers, or that she had possession of the same. Mater v. State, 9 Okla. Cr. 380, 132 P. 383; Benson v. State, 10 Okla. Cr. 16, 133 P. 271, 274; Crowder v. State, 47 Okla. Cr. 197, 287 P. 739.

In the statement of the court as shown by the record as to how far the liquor was found inside the pasture fence that, "let the record show that it is about seventy five feet", was in effect a comment upon the weight of the evidence, and the further statement of the court overruling the defendant's objection to the sheriff's statement, "Common usage over a period of time would make it a public resort."

We cannot escape the conclusion that the defendant was prejudiced by the trial court's comments on the evidence.

Jurors are easily influenced by the remarks of a trial judge, and the greatest care should be observed that nothing is said that can by any possibility be construed as an expression of the trial judge's views respecting the merits of a criminal case. Courts cannot be too circumspect in this regard.

Under our system of criminal jurisprudence, the jury are the exclusive judges of the weight and credibility to be given to the testimony of a witness, and the comments of the trial court constituted an improper invasion of the province of the jury.

In Harrison v. State, 11 Okla. Cr. 14, 141 P. 236, 237, we said:

"It is the duty of trial courts to refrain from allowing their actions or words to indicate to the jury their opinion of the credibility of any witness who testifies in the case upon trial before them, or of the merits of any such case."

And see Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, Ann. Cas. 1916A, 689; Stricker v. State, 26 Okla. Cr. 141, 222 P. 704; Westfall v. State, 30 Okla. Cr. 115, 235 P. 270; Little v. State, 72 Okla. Cr. 273, 115 P. 2d 266.

It is also insisted that the county attorney in his closing argument to the jury made improper and prejudicial remarks, and that the court erred in overruling the defendant's objections thereto.

It would seem from the record that the county attorney who accompanied the officers when the raid on the defendant's residence was made, his statement was

under the circumstances highly improper. If the county attorney knew that the defendant was guilty, he should have taken the stand as a witness so that the defendant could have the benefit of confrontation and cross-examination. A prosecuting attorney should confine his argument before the jury to a fair discussion of the issues in the case, and improper remarks objected to at the time will be considered and construed in reference to the evidence. Childs v. State, 13 Okla. Cr. 461, 165 P. 622.

In Cline v. State, 57 Okla. Cr. 206, 47 P. 2d 191, 195, we said:

"It is improper for a prosecuting attorney to state his opinion as to the defendant's guilt, or to state facts not proven by the evidence, or otherwise to get before the jury that which amounts to his own testimony. But he may state his opinion as to the defendant's guilt when he also states that this opinion is based upon the evidence in the case."

It appearing that the objectionable remarks were largely in reference to the evidence hereinbefore held inadmissible and prejudicial, we deem it unnecessary to further discuss the same.

A fair and impartial trial is guaranteed to all persons, whether innocent or guilty, and it is the duty of the trial court to uphold this guaranty.

The defendant was entitled to the full benefit of the legal presumption of innocence, and could not properly be convicted unless the evidence established her guilt beyond a reasonable doubt.

We think that under the undisputed facts and circumstances in this case the trial court should have sustained the defendant's motion for a directed verdict of acquittal.

For the reasons hereinbefore stated the judgment of the county court of Custer county is reversed and the cause remanded with direction to dismiss.

JONES, P. J., and BAREFOOT, J., concur in the conclusion.

BAREFOOT, J. (concurring). I am of the opinion that this case should be reversed and remanded to the county court of Custer county for further proceedings; but do not agree with that part of the opinion which states that the trial court should have sustained the defendant's motion for a directed verdict of acquittal.

JONES, P. J., concurs.