## HARRY McCARTHY v. STATE.

No. A-10780.   Jan. 21, 1948.

(189 P. 2d 436.)

John L. Ward, Jr., of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J. Harry McCarthy, the defendant herein, complains that the trial and conviction upon the charge of unlawful possession of intoxicating liquor and the judgment and sentence thereon to serve 90 days in the Tulsa county jail and to pay a fine of $250, are erroneous.

The facts are that someone was operating a place about ten miles east of the city of Tulsa on route 66, known as the Hollywood Inn. That on or about the third day of May, 1946, Roy Rains, a deputy sheriff of Tulsa county, appeared before the Honorable John T. Harley, judge of the court of common pleas, and made an affidavit in words and figures as follows, to wit:

"Roy Rains, being first duly sworn, upon oath deposes and says: That certain intoxicating liquor is being manufactured, sold, bartered, given away, and otherwise furnished; and is being kept for the purpose of being sold, bartered, given away, and otherwise furnished in violation of the prohibitory laws of the State of Oklahoma; the kind and description of said liquor being as follows to wit:

"Wine, beer, whisky and other intoxicating liquor, and imitations thereof and substitutes therefor, the exact quantity thereof being unknown.

"That said liquor is being disposed of and kept in the manner aforesaid by One McCarthy on the following de-

scribed premises situated in Tulsa County, Oklahoma, within said County and State, to-wit: a certain night club known as Hollywood Inn in a one-story building located on the North 133 Feet of the East 198 Feet of the North ½ of the Northwest ¼ of the Northeast ¼ of the Northwest ¼ of Section 9, Township 19N, Range 14 East in Tulsa County, State of Oklahoma together with the curtilege thereof and the appurtenances thereunto belonging.

"This said building is not a private residence, and is used as a place of public resort and for the furnishing and storage of intoxicating liquor."

Upon the foregoing facts as alleged, a search warrant was issued by the Honorable John T. Harley on the 3rd day of May, 1946, directed to Roy Rains to search a certain nightclub known as the Hollywood Inn, all as described in the affidavit.

That pursuant thereto, on said date of May 3, 1946, a search was made of the said Hollywood Inn and eight one-half pint bottles of Old Crow Whisky, three pint bottles of assorted whisky, one four-fifth quart bottle of gin and one four-fifth quart bottle of rum were found incident to said search and return thereon was made into the court of common pleas by H. A. Lewis, deputy sheriff of Tulsa county.

The first assignment of error urged on behalf of the defendant is that the foregoing affidavit upon which the search warrant was issued served, the search made, and the evidence thereon obtained, was insufficient as a matter of law, for the reason that, though the affidavit was positive in form, it did not affirmatively state facts tending to establish probable cause but was a mere positive affirmation of conclusions.

The form of the hereinbefore set forth affidavit has repeatedly been held to be sufficient by this court. Smith

v. State, 30 Okla. Cr. 144, 235 P. 273, 162 A. L. R. 1414. The affidavit in that case was almost identical with the one hereinbefore set forth. The affidavit in the Smith case, supra, reads in substance as follows:

"J. H. Smitherman, being first duly sworn, upon oath deposes and says: That certain intoxicating liquor is being manufactured, sold, bartered, given away, and otherwise furnished, and is being kept for the purpose of being sold, bartered, given away, and otherwise furnished, in violation of the prohibitory law of the state of Oklahoma, the kind and description of said liquor being as follows, to-wit: Wine, beer, whisky, and other intoxicating liquor, and limitations thereof and substitutes therefor, the exact quantity thereof being unknown to affiant. That said liquor is being disposed of and kept in the manner aforesaid by one John Doe, whose real name is unknown to informant, on the following described premises, situate in Tulsa county, Oklahoma, within said county and state, to wit: One certain one-story frame house located as follows: Fifth house east from coal chute in the West Tulsa Frisco yards, and north of Frisco railway, in the county of Tulsa, together with the curtilage thereof and appurtenances thereto. That said building is a private residence, and is used as a place of public resort, and for the storage and furnishing of intoxicating liquor."

It will be observed that the affidavits are almost identical. In the Smith case, supra, the court distinguishes from Hannan v. State, 29 Okla. Cr. 203, 233 P. 249, 162 A. L. R. 1414, relied upon by the defendant. In the Smith case, supra, this court said:

"In the Hannan Case the affidavit upon which the search warrant was based was as follows: '* * * That intoxicating liquors are being kept by John Doe, and in the said John Doe's possession, in a certain building situated at 616-618 E. avenue in the city of Lawton, county of Comanche, and state of Oklahoma, for the purpose and with the intent of the said John Doe to sell the same

in violation of the law, and for the purpose of committing a public offense.'

"Whether an affidavit for a search warrant states evidential facts or mere conclusions is sometimes difficult to determine. In this regard it seems to us that the affidavit in the Hannan Case is on one edge of the twilight zone, and the affidavit here under consideration is on the other edge. * * *

"Now let us see how the affidavit in the case here under consideration differs from the one in the Hannan Case. The affidavit in the instant case shows that 'John Doe' was a fictitious name, and that the offender's real name was unknown to affiant. It also states that the place described was a place of public resort, the fifth house (presumably a residence) east of the coal chute, and that it was a place where wine, beer, and whisky were being kept. All these statements, considered together, reasonably implied that the liquor described was being kept for an illegal purpose.

"While we do not wish to hold that the affidavit in the case here under consideration is a model in form and substance, we do hold that there were some facts stated sufficient to warrant the magistrate in making a finding of probable cause. While a search warrant must be based upon evidentiary facts, the quantum of evidence necessary to show probable cause may be quite insufficient to support a verdict of guilty.

"The two affidavits differ materially in three vital particulars: First, in naming and describing the persons; second, in naming and describing the intoxicating liquors; and, third, in describing the character of the place where the liquors were being kept. In the Hannan Case nothing is stated but naked conclusions; in the instant case there are some facts stated designating the person in possession, the kind of liquor, and the character of the place where it was being kept.

"Without receding from any of the conclusions announced in the Hannan Case, we hold that the court

erred in this case in suppressing the evidence obtained by means of the search warrant, * * *."

This court has held numerous affidavits substantially in the same form as the one involved in the case at bar and that involved in the Smith case, supra, to be valid. Roe v. State, 32 Okla. Cr. 113, 240 P. 140; Mullus v. State, 32 Okla. Cr. 134, 240 P. 135; State v. Skelton, 36 Okla. Cr. 377, 254 P. 754; Cahill v. State, 38 Okla. Cr. 236, 260 P. 91; Dobbs v. State, 39 Okla. Cr. 376, 265 P. 658; Hayes v. State, 41 Okla. Cr. 302, 274 P. 41; Hanson v. State, 55 Okla. Cr. 138, 26 P. 2d 436; Heath v. State, 54 Okla. Cr. 240, 17 P. 2d 527. In Heath v. State, supra, this court quotes with approval from the case of Smith v. State, supra, substantially as we have quoted from the same. It is therefore apparent that this contention is without merit.

The defendant makes twenty-four (24) separate and distinct assignments of error. He groups them under eight (8) propositions which he urges in his brief. The foregoing assignment of error is the only one which is not entirely without merit. It will not be necessary, however, for us to consider but one other proposition which is clearly decisive of the issues involved in the case at bar. That assignment is set out in proposition number five (5), to the effect that the court erred in failing to sustain the defendant's demurrer to the evidence and in its failure to give the defendant's first and second requested instructions, directing a verdict of not guilty in favor of the defendant. This contention is directed at the insufficiency of the evidence and is predicated upon the proposition that the state failed to show ownership or possession of the liquor herein involved in the defendant Harry McCarthy. The record in this regard discloses the following facts:

Deputy Sheriff Roy Rains testified in relation to ownership and possession of the whisky and the Hollywood Inn, as follows, to wit:

"Q. Do you know who operates the Hollywood Inn? A. To the best of my knowledge— Q. Whom did you serve the search warrant on? A. Mr. McCarthy. (C-M 65) Q. Are you familiar with Hollywood Inn? A. Yes. Q. How long have you been familiar with it? (C-M 66) A. Almost a year. Q. During that period of a year, can you tell us who operated the Hollywood Inn? A. Mr. McCarthy. (C-M 67)."

It should be observed that the witness, Roy Rains, first said he knew "to the best of my knowledge" who operated the Hollywood Inn, indicating he was not sure. Even in this he is corroborated by no one or no circumstance of substantial nature. This is the most positive evidence in the record showing defendant's connection with the Inn or his ownership and possession of the liquor found in the Hollywood Inn, upon which this prosecution is based. There were three officers in addition to Deputy Sheriff Roy Rains, Deputy Sheriffs R. W. Brooks, Howard Lewis, and Charles Reynolds, all of whom testified, but their testimony affords not the slightest allusion to ownership, possession, control, or the exercise of dominion over the same, indicative of possession or ownership. To the contrary, the testimony of Deputy Sheriff Brooks is as follows, to wit:

"Q. This man you say came in the door, he made some motion, as you started towards the cashier. A. Yes. Q. Do you know whether or not that was Don Farrington? A. I don't know what his name is, tall slim fellow. Q. Did you later talk to him that night? A. I might. Q. You stood there and talked ten minutes? A. I might. I talked to several. Q. At that time Harry McCarthy wasn't there when any such indication was made with his head. A. I seen him in there. Q. He didn't make that

indication? A. It wasn't him. (C-M 88, 89) * * *. Q. You don't know who runs the place? A. I don't know the name of any. (C-M 90)."

The foregoing testimony of Officer Brooks indicates that some man other than the defendant was exercising control over and was in possession of the liquor herein involved. The only other attempt to connect the defendant with the ownership and possession of the liquor and the Inn is to the effect that the defendant had been seen there on numerous occasions prior to the one herein involved and that when the raid was in progress the defendant followed the officers around. Other than this, there is no evidence whatsoever tending to establish the essential elements, to wit, ownership and possession. Furthermore, the record discloses that a man by the name of Don Farrington and his family lived in the house forming a part of the Hollywood Inn, and though the officers were loathe to admit it, Farrington was the man who gave the nod to the cashier, which act is highly indicative of control, if not possession. In Crowder v. State, 47 Okla. Cr. 197, 287 P. 739, 740, this court quoted with approval from Mater v. State, 9 Okla. Cr. 380, 132 P. 383, as follows:

"In a prosecution for having possession of intoxicating liquors with intent to sell same, the burden was on the state to prove that the place where the liquor was found was in defendant's possession or under his control, or that the intoxicating liquor was his, or that he had possession of same either as owner or employee."

In Hill v. State, 76 Okla. Cr. 371, 137 P. 2d 261, 267, this court said:

"There should be some proof that the defendant was in possession of the intoxicating liquor found in the pasture or such circumstances from which it may be reasonably and logically inferred, such as proof of the ownership, or control of the land where it was found, or such

connection with it that it can be said that there is proof of possession. The evidence fails to show that the pasture was in the possession or under the control of the defendant, or that the intoxicating liquor was hers, or that she had possession of the same. Mater v. State [supra] ; Benson v. State, 10 Okla. Cr. 16, 133 P. 271, 274; Crowder v. State [supra]."

In McCarthy v. State, 6 Okla. Cr. 483, 119 P. 1020, quoted with approval in Robinson et al. v. State, 66 Okla. Cr. 139, at page .143, 90 P. 2d 54, 56, wherein this court said:

"The evidence should be of such a character as to overcome prima facie the presumption of innocence. If the evidence raises a mere suspicion, or, admitting all it tends to prove, the defendant's guilt is left doubtful or dependent upon mere supposition, surmise, or conjecture, the court should advise the jury to acquit the defendant."

Then, in Robinson et al. v. State, supra, this court said:

"The first fundamental principle of criminal jurisprudence is that every defendant is presumed to be innocent until his guilt is established by competent evidence beyond a reasonable doubt. Here there is absolutely no evidence to rebut this presumption. The evidence is not sufficient to support a charge of sale by defendants. Certainly there is nothing to show possession. It would be a mere matter of guess to say that defendants were guilty under this testimony."

In Bohannon v. State, 65 Okla. Cr. 121, at page 123, 83 P. 2d 422, 423, this court said:

"To justify or sustain a conviction for unlawful possession of intoxicating liquor there must be evidence sufficient to prove possession and also evidence of the criminal intent. Eastridge v. State, 57 Okla. Cr. 323, 48 P. 2d 869."

In the case at bar, as to the proposition of ownership and possession, the evidence merely raises a suspicion or, to say the least, the defendant's guilt is doubtful or dependent upon mere supposition, surmise, or conjecture. See, in this connection, Ritter v. State, 84 Okla. Cr. 418, 183 P. 2d 257, 259, wherein this court, quoting with approval from Simpson v. City of Tulsa, 67 Okla. Cr. 224, 93 P. 2d 539, says:

" 'To sustain a conviction of crime, each and every material element must be supported by the evidence.

" 'To sustain a conviction, it should appear not only that the offense was committed, but the evidence inculpating the defendant should do so to a degree of certainty transcending mere probability or strong suspicion.

" 'While it is well settled that this court will not disturb the verdict on account of the insufficiency of evidence when there is evidence to support it, the converse rule is equally well settled that it is not only the province, but the duty, of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence, to which every one is entitled who is put upon trial for an offense.'

"See, also, Cude v. State, 42 Okla. Cr. 357, 276 P. 240; Hewitt v. State, 61 Okla. Cr. 415, 69 P. 2d 93; Severe v. State, 64 Okla. Cr. 53, 77 P. 2d 116; Williams v. State, 38 Okla. Cr. 370, 261 P. 977; Bass v. State, 29 Okla. Cr. 92, 232 P. 955; Davis v. State, 32 Okla. Cr. 436, 241 P. 500."

Somebody was guilty, it is true, but the identity of the guilty party under this record constitutes nothing more nor less than a mere piece of speculation. It occurs to us that it would have been a very easy matter to have established ownership of the Hollywood Inn or control there-

of or proof of such circumstances from which ownership and possession could logically be inferred and from which it could be logically said there was proof of possession of the intoxicating liquor herein involved. This record merely discloses that the defendant, McCarthy, was there and had been there on other occasions, and that he followed the officers around when the search was being made. The record does not attempt in any way whatsoever to establish his connection with the Hollywood Inn, as to ownership, management, as an employee, or as to who owned the liquor, other than on the basis of mere supposition or speculation.

For the foregoing reasons, we are of the opinion that the court erred in not sustaining the defendant's demurrer to the evidence. The judgment of the court of common pleas of Tulsa county is reversed and the cause remanded for a new trial.

BAREFOOT, P. J., and JONES, J., concur.