WESLEY DAVIS et al. v. STATE.

No. A-5374.   Opinion Filed Dec. 16, 1921.
(241 Pac. 500.)

Thos. Norman, for plaintiffs in error.

The Attorney General, for the State.

DOYLE, J. The information in this case charges that in Carter county, May 19, 1924,

"Wesley Davis, Alfred Davis, and Dan Miller did then and there willfully and unlawfully have in their possession certain intoxicating liquors, to wit, 64 gallons of Choctaw beer, with the unlawful intent to sell the same."

On the trial the jury returned a verdict finding the defendant Alfred Davis not guilty, and the defendants Wesley Davis and Dan Miller were by separate verdicts found guilty as charged in the information and the punishment of each assessed at a fine of $500 and confinement in the county jail for six months. To reverse the judgments rendered on the verdicts, they have appealed to this court.

The first and most important question presented is the failure of the court to direct an acquittal, because the evidence is insufficient to connect the appellants with the offense charged.

The state relied for this conviction upon the testimony of two witnesses. Jesse Dunn, deputy sheriff, testified that he saw Wesley Davis and Alfred Davis at their home, and the old man, Wesley Davis, in company with two other men and two women had four bottles of what witness called "Choc"; that he did not taste the "Choc" or have it analyzed; that he did not see the defendant Miller that day at any place. John W. Ginn, deputy sheriff, testified that he separated from Jesse Dunn at the Davis home, and went east a distance of some 250 yards to a lake, and there found two 32-gallon barrels of "Choc"; that he tasted the stuff

he seized, and it was intoxicating; that the defendant Miller lived a quarter of a mile south and a little east of Davis; that he did not see Miller anywhere that day; that they arrested Wesley Davis and Alfred Davis and brought them to town.

On cross-examination he stated that Dan Miller lived outside the city limits of Ardmore, near the rubber plant and the Empire Refinery; that there was another house between the Miller home and where the "Choc" was found; that this house was about 300 yards from where he found the "Choc"; that the lake covered 5 or 6 acres and was on the refinery property; that he had never seen Wesley Davis, Alfred Davis, or Dan Miller down there; that the evening before he saw the defendant Miller at old Daddy Davis' place; that at that time he noticed that he had a 100-pound sack of sugar in his car which was standing on the road in front of the house.

At the close of the state's evidence there was a motion by the defendants for a directed verdict on the grounds that the evidence was insufficient to connect them with the commission of the offense, which motion was overruled.

For the defense, Lon McMillan testified that Alfred Davis and he were digging a cellar for Dan Miller on the day of the search and arrest; that it was 450 yards or further from the defendant Davis' home to the lake; that a man named Cole lived within 250 yards of the lake; that the defendant Miller lived a little over a quarter of a mile southwest of the lake.

The defendant Dan Miller testified that he was at the home of Wesley Davis the day before Davis was arrested; that he had a sack of sugar in his car, purchased for domestic consumption; that he took it home; that he owned his home in the Industrial addition where he lived; that he kept cattle out there; that he stepped the distance from

where the barrels of "Choc" were found to the Davis home; that it was 290 steps, 3 feet to a step; that the "Choc" found was on the Industrial town site, not in his possession or possession or control of either of the defendants; that it was not found on his place nor did he have anything to do with it; that he had been chasing some of his cattle out of the Thomas pasture east of him and met the officers, and they told him to get his car and go to town and make old man Davis' bond before they arrived at the jail with him.

At the close of the evidence the motion for a directed verdict was renewed as to each of the defendants.

It is well-settled law in this state that if there is evidence to support the conviction this court will not weigh the sufficiency of the same to support the verdict. It is, however, equally well-settled law in this state that this court will consider all the evidence to ascertain whether a verdict is in fact founded upon sufficient evidence to warrant a conviction.

If the evidence introduced by the state fails to incriminate the defendant, or as a matter of law is insufficient to show that he is guilty of the offense charged, it is not only the right but the duty of the trial court to advise the jury to return a verdict of acquittal. Section 2713, C. S. 1921.

It is unquestionably the law that crime may be established by circumstantial evidence, otherwise society would be at the mercy of the criminal classes, but it is also uniformly held that the circumstantial evidence must go beyond mere suspicion and conjecture, and where circumstantial evidence solely is relied on for a conviction the circumstances tending to show guilt must be consistent, the one with the other, and point so strongly to the guilt of the defendant as to exclude every other reasonable hypothesis except that of guilt.

In this case the burden was on the state to prove that

the place where the liquor was found was in the defendants' possession or under their control, or that the Choctaw beer belonged to them, or that they had the possession of the same, either as owners or agents. The mere fact that the defendant Wesley Davis did have in his possession at his home four bottles of what the officers said was "Choc" is insufficient in itself to connect him with the liquor found by the lakeside. It is now shown that these four bottles contained intoxicating liquor. So far as the evidence discloses, these bottles were never opened, and the contents were not analyzed. It was the state's theory because the defendant Miller on his way home with the sack of sugar in his car had stopped at the Davis home the night before the seizure was made that this connects him with the unlawful possession of intoxicating liquor as charged in the information, and this is the only incriminating circumstance tending to connect the defendant Miller with the offense charged.

Upon a careful consideration of the evidence offered on behalf of the state, we are of opinion that it wholly fails to prove the offense charged, for the reason that no actual or constructive possession by these defendants of the intoxicating liquors charged has been shown by the evidence; and for this reason we are of opinion as a matter of law that the evidence was insufficient to warrant a conviction.

The judgments of the lower court are accordingly reversed.

BESSEY, P. J., and EDWARDS, J., concur.