MONROE MAHAFFEY v. STATE.

No. A.-6605.   Opinion Filed July 20, 1929.
(279 Pac. 704.)

30

W. T. Dixon and L. M. Gensman, for plaintiff in error.

Edwin Dabney, Atty. Gen., and W. C. Lewis, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted in the county court of Comanche county on a charge of having in his possession one still without his having resigtered the same with the proper United States officer, and without having obtained from said officer a certificate of said registration and without having filed the said certificate or a certified copy with the county clerk of Comanche county, and was sentenced to pay a fine of $500 and costs, taxed at $45.50, and be imprisoned in the county jail for a period of 30 days.   Motion for new trial was filed, considered, and overruled, and the defendant has appealed to this court.

The defendant filed a demurrer to the information alleging that it failed to charge the commission of an offense against the laws of the state of Oklahoma, which demurrer was overruled, and defendant duly excepted. After a careful examination of the information, we hold

that the information states sufficient facts to place the defendant upon his trial for having possession of a still without having procured the proper certificate of registration from the United States and filed the same with the clerk of his county, and the demurrer was therefore properly overruled. Defendant also filed motion to suppress the evidence secured by the state, on the ground that the same was procured by illegal and unlawful acts of the officers and that the search made by the officers was void and of no force or effect. The motion to suppress the evidence was overruled by the court, and defendant duly excepted.

When the jury was impaneled the defendant objected to the introduction of any testimony for the reason that the information did not state a cause of action. The court overruled the same, and defendant excepted.

Jess Ansel was called as a witness for the state, and testified: He was sheriff of Comanche county; he knew the defendant; on the 6th day of February, 1927, the defendant lived about five miles southwest of Cache in Comanche county;

"We went to the Mahaffey place and asked Mrs. Mahaffey if he was at home, and she said he was not; Mrs. Mahaffey said we could go ahead and search the house, and I told her we did not care to look in the house, so we started out and found a still on the place; it was in the blackjacks between 100 and 200 yards from the house; it looked like it had not been used for some time. It was clean and not black. The capacity was about 250 gallons. We destroyed it."

On cross-examination witness stated that defendant lived on the southeast quarter of the section.

"There was a road on the south of defendant's place; it was very sandy and not traveled much; I never traveled the road on the east side of the place. The blackjack

and shenery is very thick. Mr. Mahaffey was not at home when we got there, but Mrs. Mahaffey told us to go through the house; we did not have a search warrant; I went west of the house around through the timber; the timber was very thick. I could tell I was southwest from the house, but I could not see the house from where I found the boiler; could not see the road that run down from the house; the blackjack and shenery was so thick you could be right at the road before you could see it. I know I was southwest of the house about 100 or 200 yards; it might have been farther; after I found the boiler, I drug it to the open space before I chopped it up; when I found the boiler I marked the road from it and found the other boys and went back; I made the tracks so I could find the way back to where the boiler still was. I could not see in the thicket where I was until I stooped over and looked under the brush."

Harry Summers testified to going to the Mahaffey home with the sheriff, Jess Ansel, and that they found some empty barrels somewhere on the place; he could not tell definitely where they found them. Many questions were propounded to this witness which were objected to by the defendant, some were sustained by the court and others overruled; the greater number of questions being in no way whatever questions that tended to establish the charge against the defendant. The witness further testified the still he claims they found was made of copper.

"The thicket was very dense; I believe the brush begun about 75 or 100 yards west of the house; we tracked Mr. Ansel's tracks to the still when we went back out with him; could not see the road from the house where the still was found; could not see the house."

A. W. Elrod, called as a witness, stated he knew where defendant lived, but had never known the defendant before he went out with Mr. Ansel and Mr. Summers to the defendant's home. Questions were propounded to this

witness and objected to by the defendant with reference to some barrels found in the neighborhood of this defendant's farm;

"When I first saw the still it was in some shenery in the scrub oak timber; we drug it out through the shenery to the car and cut it up; I saw hogs and stock out there first one place and then another."

On cross-examination witness stated there was some plowed ground on the place, but could not say where it was located;

"It was pretty close to the house; it was about 100 to 125 yards from the section line on the east side of the place up to where this road run around on the west side of the redeemed land; I never paid much attention to that; this was about a half mile from the house, the road east was a traveled road, but it was wet and somewhat hard to travel, and the trail came down by the defendant's house running east and west; we could see they were detouring, but we did not know if they were traveling by there; the remainder of the 160 acres not in cultivation is covered in shenery and scrub oaks; I could not tell you the number of acres."

The defendant in his own behalf testified that he resided three miles south and 2 miles west of Cache, Oklahoma; he had resided on the place for about 24 years; that his business was raising mules, cattle, and hogs;

"I have an Indian quarter south of my house and a quarter northeast of my house, and 120 acres in cultivation; I have 20 acres of my own farm in cultivation; I reside on the southeast quarter; the 20 acres that is broke out is in the southeast corner of the place; there is 5 acres orchard and 1 acre garden spot that is 20 steps from the house."

Witness then described a plat he had made of the place showing the relative land to the defendant's part of the place; defendant stated:

"The 80 acres in hog pasture, and going west to where I fenced my hogs there, is 10 or 15 acres that you can see from the southeast corner of the pasture; all that is in there is practically blackjack or shenery; I was not at home Sunday when the officers came; I left home about 9 or 10 o'clock in the morning with Sidney Biles; he is a cattle buyer; when we left we first went down to where the cattle were; when we came home my wife advised me that the officers had been to my place, and she told me which way they went; Mr. Biles and myself started out, and I guess we were gone about an hour; we got away down in the southwest part of the place, and Mr. Biles called me, and when I went to where he was, we saw where something had been dragged out in the open, and looked like there was a print of an axe, and judge there is where they found the still. Then we come back out east of the road (indicating on the map that had been introduced) and up this road to the house; when we got to the road we were about 150 yards from the section line, and it was about 150 yards from this road to where they claim the still was found; Mr. Biles found the place; I did not know anything about the still being there, had nothing to do with it, and it was not my still."

On cross-examination the defendant stated the still was found about 300 yards from his house; that he and his boys did most of the work.

"I had some sows that was going to bring pigs on the land where they claim the still was found; the barrels they claim to have found was about 300 yards south of the house; it was south and west of where they claim they found the still; I have lived on this quarter about 24 years."

This is in substance the testimony of the defendant.

Sidney Biles was called as a witness for the defendant, and stated he was a cattle buyer; he went to defendant's home on the 6th of February, 1927, arriving there

about 8 o'clock in the morning; he had been out to the place once or twice; that the land was sandy and black-jack land.

"The Sunday morning I went out Mr. Mahaffey went with me to Fred's place to look at some hogs; I found the place where they claim the still was found, and it was about 150 or 200 yards out to the road, and it looked like a quarter of a mile to the house; you could not see the section line or the field from where they claimed the still was found; I would say of the 160 acres there is about 90 or 100 acres that is a jungle; the only part that is not brushy is in cultivation."

On cross-examination witness stated they were about two hours looking for the place the officers claim they found the still; he lived 20 miles from the Mahaffey place; he lived six years in Lawton.

"When we started out, we went some yards together, and I turned around and got lost from him and found myself by calling Mr. Mahaffey."

The defendant has assigned ten errors alleged to have been committed by the trial court. The seventh assignment is:

"That the evidence introduced fails to establish the commission of any public offense against the law of the State of Oklahoma by the defendant."

The ninth assignment is:

"That the court erred in overruling and in not sustaining the motion for a new trial filed by the defendant."

These two errors will be considered together, as they relate to the same question. The substance of the testimony as set out herein is that the officers went to defendant's home Sunday morning, without any charge against the defendant, without any warrant for his ar-

rest, or to search the premises. They contend when they arrived at defendant's home his wife was at home, and the sheriff stated he wanted to look over the place, and she told him to go ahead and look, and as a result they claim down in the thicket some distance from the house they found the still; the officer claims that the woods and brush were so dense they could not see any distance, and he had to stoop down in order that he might get below the brush and see the still, which he claims he found and afterwards chopped up. Neither of the officers could definitely fix the distance they claim the still was located from defendant's home, but all agree it was quite a distance in the thicket. The testimony further shows there was no indication that the still had been used; it was bright and clean, and there was no testimony showing any trace of a road leading to and from where the still was located, and no contention made by the state that indicated that the defendant or any one from his home had been going back and forth to where they claim the still was found.

Where a still is found on land owned or controlled by defendant, the presumption is it belongs to him; but, after a careful consideration of all the testimony in this case and circumstances surrounding the location of the still found, we do not believe the testimony sufficient to show beyond a reasonable doubt the defendant owned or had possession of the still. The only suspicious circumstance that has any tendency to connect the defendant with the still is that it was in the jungle on a tract of land owned or controlled by the defendant a distance from defendant's home estimated by the witnesses all the way from 200 yards to a quarter of a mile; the house could not be seen from where the still was found, nor could the traveled road.

The question for this court to determine is: Is there sufficient testimony to sustain the conviction? In order to do so we must infer the still claimed to have been found by the officers was in the possession of the defendant, as the proof does not show it was. The indications are the defendant is guilty; at least, there is a strong suspicion of guilt; but we hold the evidence falls far short of that convincing character that warrants a conviction of guilt. It will be observed that there is no direct evidence tending to show that the defendant had either actual or constructive possession of the still. The testimony in this case is circumstantial, and circumstantial evidence is legal, and if it is of such quantity and quality as to establish the defendant's guilt beyond a reasonable doubt, it will sustain a conviction. It is a rule in this state, however, that where conviction is sought upon circumstantial evidence alone, the circumstances proved must not only be consistent with each other and with the hypothesis of defendant's guilt, but inconsistent with any rational hypothesis other than his guilt. We hold the evidence wholly insufficient to support the judgment. Cooksey v. State, 34 Okla. Cr. 174, 245 Pac. 1001; Cook v. State. 32 Okla. Cr. 4, 239 Pac. 682; Davis v. State, 32 Okla. Cr. 436, 241 Pac. 500; Lemke v. State, 33 Okla. Cr. 34, 241 Pac. 833.

The evidence on the part of the state is insufficient to sustain the charge in the information, and the court should have sustained the demurrer to the evidence and advised the jury to acquit the defendant.

Other errors are assigned by the defendant, some possessing merit, others without merit; but, in the view we take of this record, it is not necessary to consider them.

The judgment of the lower court is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.