## J. BOB DEES v. STATE.

No. A-10435. June 20, 1945.
(160 P. 2d 406.)

I. L. Cook, of Atoka, for plaintiff in error.

Randell S. Cobb, Atty. Gen., E. J. Broaddus, Asst. Atty. Gen., and W. H. Parker, Co. Atty., of Atoka, for defendant in error.

BAREFOOT, P. J.   Defendant, J. Bob Dees, was charged in the district court of Atoka county with the crime of manslaughter in the first degree, was tried, convicted and sentenced to serve a term of seven years in the State Penitentiary.   From this judgment and sentence he has appealed.

The only assignment of error relied upon by the defendant is that the verdict of the jury was not supported by sufficient evidence, and that the judgment and sentence is contrary to law.

The defendant is charged with killing his wife, Norma Dees, on July 27, 1942, by means of "a certain dangerous weapon and blunt instrument, the exact description of which is unknown to informant."

On the date alleged, the defendant and his wife went fishing with his father and mother, and in the late afternoon returned to the home of his father in Wapanucka, Johnston county.   They later went to the home of Russell Brown, the brother-in-law of defendant's wife, and at whose home the mother of his wife was visiting.   They left there about 9 o'clock, and drove to Atoka, a distance of 17 miles, going in defendant's one-seated automobile. They drove to a cafe where beer was sold, known as

"Betty's Place," arriving there about 10:30 on Sunday night. Defendant went in the cafe and got a bottle of beer for himself, and a "coke" for his wife, taking it out to the car. Some man and his wife, whom they did not know, from Oklahoma City, drove up, and they talked about fishing, and the two men went into the cafe, and defendant drank another beer. They visited around the cafe until 12 o'clock, when defendant got in his car, and they started home. He took a bottle of beer with him when he left, and after drinking the contents, threw the bottle from the car.

Defendant testified that he and his wife at no time had any quarrel or misunderstanding, and there is no evidence to contradict this statement. They were traveling at a rate of speed of from 20 to 30 miles per hour, when defendant heard the car door click, and realized that his wife had fallen from the car. He stopped, got out and went back to his wife, and found that she had been hurt. He picked her up in his arms and found that she was too heavy to carry, put her back down and backed the car up, lifted her in, and started to Wapanucka, his home, at a faster rate of speed.

Defendant testified that he ran into a bunch of cattle on the highway, and in trying to miss them, turned into the bar-ditch, and struck one of the cows, bending a fender. After straightening the fender, he drove on to Wapanucka, going immediately to the home of Dr. Haberly. He could find no one at home, and went across the street to the home of a cousin, Lavada Riley, who informed him that the doctor had gone to a ball game in Dallas. He told his cousin that Norma had fallen out of the car and was hurt, and asked her opinion of the other doctor in Wapanucka. Miss Riley got in the car with them, and they drove two blocks to the home of

Russel Brown. Defendant called Mr. Brown and told him that Norma had been hurt, and asked him to take them to Ada to the hospital. Mr. Brown and the defendant placed Norma in Mr. Brown's automobile, and Mr. Brown, Mrs. Henson, the mother of Norma, and the defendant drove to Ada, a distance of 42 miles, and took Norma to the Valley View Hospital. Mr. Brown drove the car and Mrs. Henson sat in the front seat with him, and the defendant and his wife occupied the back seat.

They reached the hospital about 2:30 in the morning, and Norma was undressed by a nurse, Leota Sherman, and her mother, and was immediately examined by a doctor. Defendant told Miss Riley, Mr. and Mrs. Brown and his mother-in-law at Wapanucka, and the doctor at the hospital, that the door had come open and his wife had fallen out of the car.

Dr. Peterson examined Norma and prescribed for her, and was with her about half an hour. He returned to the hospital about 6 o'clock the next morning, and Norma died about 6:15. Four hours thereafter an autopsy was made by Dr. Peterson, and he testified that "she had a deep laceration in the occipital region on the right side, posterior region of the skull." He then explained that she had a deep laceration at the lower base of the skull on the righthand side, "and there was no depression of the bones found, it was not pushed in." He testified that when he performed the autopsy he found a large hemorrhage in the posterior portion of the brain that was opposite the area where she was struck; and that there was small hemorrhage through the brain. That in his opinion her death resulted from a brain injury, caused by a blow from a blunt instrument. He testified that the deep laceration was a star-shaped wound, and that it penetrated to the skull. He also testified that

there were no foreign substances in the wound, or in the clot of blood in her hair. That there were no other wounds or scratches on the arms, legs or body.

Mrs. Henson, mother of deceased, testified that there were no scratches, wounds or bruises on her body, except the back of her head; and that there was no dust or gravel in her hair or her clothing or shoes. The nurse, Leota Sherman, testified that she undressed Norma and put her to bed. That there was a little dust on the back of her hair, and she did not know whether it was gravel or dust.

Defendant was taken by the sheriffs of Atoka and Pontotoc counties along the road from Atoka to Wapanucka the following day in an effort to have him locate the exact spot where his wife fell from the car. Defendant was unable to locate the place with accuracy.

There was offered in evidence a lug wrench and a pair of pliers and pop bottles that were found in defendant's car, which he left parked at the Russel Brown home in Wapanucka.

Mr. and Mrs. Brown, the mother of defendant, and Lavada Riley all testified that defendant stated to them when first seen that the car door had come open and his wife had fallen out of the car. They all testified that when they asked her what had happened, her only reply was, "My head is killing me." From the testimony, this was the only statement that she made. She never at any time stated or gave any indication that defendant had struck her.

The officers also testified to conversations with defendant, both in Ada and on the way to Atoka and Wapanucka, but nothing contrary to the evidence above stated was related. They testified as to the condition of the

automobile of defendant, and as to blood spots being on the back of the car seat, and one of the officers testified that he examined the car and found that the outside handle was off the right car door, and it could not be opened from the outside—but only by lifting the handle on the inside.

Defendant also placed upon the witness stand Gilbert W. Daney, county judge of Atoka county, who conducted the preliminary examination of the defendant.

Judge Daney testified that after the preliminary examination and he had ordered the defendant held to the district court, he was passing the automobile of defendant on the street, and someone called his attention to the condition of the door, and to the fact that it would open by pressing against it from the inside. He was interested by reason of this issue having been raised at the preliminary hearing. He had the party get in the car and hold his hands up so that witness could see that he did not touch the fastener, and when he leaned against the door rather hard, it flew open and the party almost fell from the car, and witness attempted to catch him. This party was away from Atoka county at the time of the trial, and did not testify, but the brother of defendant, Nily Dees, testified that the right-hand door had been caved in as testified to by defendant. He testified that he examined it the morning of the preliminary, and that when you leaned against it, it would fly open. He saw his brother-in-law, Clint McNeily, now working in the shipyards in the State of Oregon, nearly fall out of the car when he leaned against it, when calling the matter to the attention of the county judge of Atoka county.

We have carefully read and analyzed this record because of the issue presented—that the evidence is insuf-

ficient to sustain the judgment and sentence; and the argument presented when the case was orally argued.

The record has been examined with the rule well in mind that has so often been announced by this court, that the verdict of a jury will not be set aside where there is substantial evidence to support it, and also the rule just as firmly established that where the evidence is insufficient to sustain the judgment and sentence, this court will not hesitate to set it aside. Green v. State, 7 Okla. Cr. 194, 122 P. 1108; Sies v. State, 6 Okla. Cr. 142, 117 P. 504; Adair v. State, 15 Okla. Cr. 619, 180 P. 253; Cude v. State, 42 Okla. Cr. 357, 276 P. 240; Simpson v. City of Tulsa, 67 Okla. Cr. 224, 93 P. 2d 539; Cook v. State, 71 Okla. Cr. 65, 108 P. 2d 184; Cole v. State, 70 Okla. Cr. 109, 104 P. 2d 981; Dowell v. State, 67 Okla. Cr. 455, 94 P. 2d 956; Wheeler v. State, 67 Okla. Cr. 291, 94 P. 2d 9; Williams v. State, 61 Okla. Cr. 396, 68 P. 2d 530.

With this rule in mind, we have come to the conclusion that the judgment and sentence.in this case should not stand upon the evidence revealed by the record.

It will be noted that the information filed in this case alleges that the defendant "did . . . make an assault in and upon one Norma Dees by means of a certain dangerous weapon and blunt instrument, the exact description of which is unknown to informant, . . . ."

To substantiate this allegation, there was offered in evidence a lug wrench and a pair of pliers found in defendant's car the morning following the alleged crime. It may be stated that the evidence did not reveal any blood stains or substance of any character to indicate that either of these instruments had in any way been used in striking deceased. At the time of the oral argument the

Assistant Attorney General, who had assisted in the trial of the case in Atoka county, stated that he did not believe that either of these instruments had been used by defendant in striking deceased, but that in his opinion defendant struck her with a beer bottle. This contention is based upon the testimony of defendant that at the time he left Atoka he took with him a bottle of beer which he finished drinking a short distance out of Atoka, and tossed the empty bottle from the car prior to the accident. No bottle was found, or presented in evidence. Dr. Peterson was at no time asked by the state as to whether, in his opinion, a beer bottle could have produced the wound found on the head of deceased, but he was presented with the lug wrench and asked if an instrument of that character could have produced the wound, and he testified that it could. On cross-examination he testified that a blunt iron stake or stone could also have caused the wound.

Evidently the information was prepared upon the theory that the lug wrench or pliers had been used in striking deceased, and from reading the record, it seems that the state relied upon this theory at the trial, but this position was changed when the defendant testified to having a beer bottle in the car.

The only evidence upon which this conviction could be sustained, except a few circumstances which could with as much reason be construed as circumstances in his favor, is the testimony of Dr. Peterson. This is with reference to the wounds found upon the head of deceased, and his testimony as to the kind of instrument that in his opinion caused those wounds. While he was permitted to give this evidence and it was admissible, the deduction could just as easily be drawn that the deceased had fallen from the car as defendant testified, and that

her head had struck some object, either on the car or on the ground, that caused the injury.

The general rule in criminal cases is that, where the evidence is circumstantial the facts shown must be not only consistent with and point to the guilt of the defendant, but must be inconsistent with his innocence. Where the evidence only raises a mere suspicion of the guilt of the defendant, it is insufficient to sustain a conviction.

There is not a line of testimony to show any motive for the killing of deceased by defendant. They had been together during the day. Not an angry word or misunderstanding of any kind is shown. They had talked and conversed with other people at Atoka just prior to leaving for home. There is nothing to show that they at any prior time had ever had any misunderstanding or quarrel in any way. Defendant's every move after the accident was just as any person would have done had an accident like this occurred, as he testified. He attempted to take her to a doctor as quickly as possible. When unable to find a doctor, he immediately went to her people, her own mother and sister. He told them how it happened. He held his wife in his arms and gave her every attention, both before and after she entered the hospital. Her mother testified as a circumstance that in her opinion defendant was under the influence of liquor at the hospital, and this was based upon the fact that after the nurse put a screen around the bed, defendant sat in a chair and went to sleep. Defendant denied that he ever went to sleep that night, but stated that he sat in a corner and was quiet because the nurse told him that his wife must have quiet. There was no evidence that defendant had drunk anything with the exception of three bottles of beer, which he himself testified he had drunk over the period between 10:30 and

shortly after midnight. But the fact that he may have closed his eyes and slept after they asked everyone to be quiet, does not appear to us as a circumstance worthy of much consideration.

It is also claimed by the state that the fact that a number of witnesses, including the mother of deceased, testified that there were no bruises on deceased, and no dirt or gravel in her hair, was a strong circumstance that she did not fall from the car as defendant testified. In this connection it may be noted that Leota Sherman, the nurse, testified that there was dust or gravel in her hair. The clothing worn by deceased was offered in evidence, but the shirt of defendant, which was also taken by the officers, was not found and produced. Defendant claimed that it showed to be dirty by reason of his having his arms around his wife, and her resting on his shoulder after the accident and on the way to Wapanucka.

With reference to there being only one wound, it is just as reasonable to come to the conclusion that this one wound was caused by the fall, as to guess that it was caused by a lick administered by defendant.

The fact that defendant could not find the exact spot where his wife fell from the car should not be given much weight. The testimony of the officers was that this was a well-traveled highway. The accident occurred at night, and it is easy to understand that it might be impossible for one to be able to locate the exact spot; and the traffic over the road would soon wipe out any tracks in the road.

After reading the record in this case, our views are in accord with the expression of the court in the case of Hinsley v. United States, 1 Okla. Cr. 392, 98 P. 363, 367, where it is said:

"In harmony with the decisions of appellate courts generally, this court reluctantly disturbs the verdict of a jury upon the ground that the verdict is not supported by, and is contrary to, the evidence. This court will not set aside a verdict where there is a substantial conflict in the evidence. But, when there is no such conflict, and where there is an absence of evidence to support the verdict, it is the duty of this court to set aside the verdict. It is not the purpose of this court to invade the province of the jury in the determination of questions of fact; but in the interest of justice this court will not permit a verdict to stand unsupported by competent evidence. We have carefully read, closely considered, and analyzed all the testimony in this case, and we are unable to harmonize the verdict with the evidence."

There is no conflict in the evidence in the instant case. This verdict in our opinion was rendered by reason of the evidence of Dr. Peterson. His testimony was not direct evidence as to what caused the injury, but was expert testimony. It could as easily be deduced that the injury was caused by deceased striking her head when she fell from the automobile, as stated by the defendant, as to say that she was struck by some blunt instrument held by the defendant. There is not a line of evidence that defendant struck her with anything. If the jury came to that conclusion, it could only be a guess or surmise. Certainly this defendant should not be deprived of his liberty for seven years unless there was evidence which would justify the jury in finding him guilty of the crime charged. Here, it is not a question of there being a conflict in the evidence on any material point. It is only upon the question of the evidence being insufficient to sustain the judgment and sentence.

Some of the circumstances other than heretofore mentioned which tended to corroborate the testimony of the defendant were that defendant testified that immediately

after the accident he was driving at a faster speed and his car hit a cow in the road and bent a fender, and that he had to straighten it before he could go forward. One of the officers, Charley Gilliam, sheriff of Johnston county, testified that when he examined the car and found the fender bent, he asked defendant how the fender happened to be bent, and he immediately told him he had hit a cow and bent the fender. Also, defendant testified that the dent in the car door had been caused by his mother-in-law backing into the car at Hollis some time prior to this accident. This was corroborated by other witnesses.

We have examined this case in comparison with the facts in the case of Hubbard v. State, 71 Okla. Cr. 373, 112 P. 2d 174, which was reversed by this court because of the insufficiency of the evidence. In that case the defendant was charged with the murder of her husband. The facts in that case were much stronger than in the instant case, for the reason that a motive was shown, and here no motive was shown. Skelly v. State, 64 Okla. Cr. 112, 77 P. 2d 1162.

A person on trial charged with a crime is by law presumed to be innocent until his guilt is established beyond a reasonable doubt; and no inferences can be founded upon suspicion. except such as are natural and follow from the facts. If the facts and circumstances are not of such a character as to fairly permit an inference inconsistent with innocence, they cannot be regarded as sufficient to support a conviction. Nash v. State, 8 Okla. Cr. 1, 126 P. 260; Dowell v. State, 67 Okla. Cr. 455, 94 P. 2d 956.

Viewing this record as a whole, one can but come to the conclusion that the evidence is insufficient to sus-

tain the judgment and sentence. No person should be sent to the penitentiary and be deprived of his liberty where it is necessary to guess that he is guilty, and in this case, the evidence does not show defendant's guilt beyond a reasonable doubt.

The judgment of the district court of Atoka county is reversed, and defendant discharged unless the county attorney has other evidence he deems sufficient to convict this defendant.

JONES, J., concurs. DOYLE, J., not participating.