## HARRY RITTER v. STATE.

No. A-10721.   July 16, 1947.

(183 P. 2d 257.)

George Miskovsky, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendant, Harry Ritter, was charged jointly by information with Ruth Fugatt, for the offense of illegal possession of intoxicating liquor, to wit: 138 pints, 48 half pints, and 11 four-fifths of tax-paid whisky. A severance was prayed for and granted, and the two defendants tried separately. The whisky was discovered on a search of premises described as 2731 Northwest 18th street, Oklahoma City, Okla. The defendant was not at the premises at the time of the search. The only evidence tending to connect him either with the premises or the whisky, is of a highly vague and speculative character. The evidence upon which the state seeks to sustain its judgment and sentence was given by Mr. M. B. Cooper and Mr. Jack Caldwell, both of the Oklahoma City police force. M. B. Cooper testified as follows:

"Q. Where did you find the liquor in that case? A. In a clothes closet. Q. Do you know of your own personal knowledge that the defendant herein, Harry Ritter, lived at that address? A. No, I don't other than statements. Q. Did you find any clothing in the closets? A. Yes, sir; there was clothing there. Q. Did you find any men's clothing? A. Yes, sir. Q. Do you know who those clothes belonged to? A. No, I don't, other than statements that were made."

Mr. Jack Caldwell, of the Oklahoma City police force testified as follows, to wit:

"Q. Will you state what you found there? A. I found 184 pints of whisky in a clothes closet. Q. What room of the house was that in? A. I believe it was in the northeast room. Q. Were there any clothes in that clothes closet? A. Yes, sir; I believe there were. Q. Do you know who lived at that address. A. Well, not for sure. I know who was there. Q. Who was there at the time you made the search? A. At the time we made the liquor investigation, Ruth Fugatt was there. Q. Do you know of your own certain knowledge whether or not the defendant herein, Harry Ritter, resided at that address? A. Yes; I think he resided there."

The only evidence upon which the state relies to definitely connect the defendant Ritter with the premises, the men's clothes, and the whisky, was given on cross-examination and is as follows, to wit:

"Q. You say you know of your own certain knowledge that he did reside there? A. Yes, sir. Q. He wasn't there when you made the raid, was he? A. No, sir. Q. Did you rely on whether he lived there or not on the basis of what someone told you? A. Partly; yes, sir."

There is no other evidence in the record tending in any way to connect the defendant either with the premises, the clothes, or the whisky. The state contends that the circumstantial evidence of men's wearing apparel being in the clothes closet points to the defendant's guilt. We cannot follow this line of argument, unsupported as it is by any proof connecting the defendant with the premises, the clothes, and the whisky. Furthermore, the state contends that the defendant should be convicted on the testimony of Mr. Caldwell, given on cross-examination, in which he definitely sought to connect the defendant with the premises. This testimony must be measured in light

of his evidence on direct examination in which he said, "Well, not for sure" and, "Yes, I think he resided there." The officer's first testimony, "Well, not for sure" and, "Yes, I think he resided there," reveals that he is in doubt as to the actual residence of the defendant. We are inclined to believe that he was in doubt. His testimony on cross-examination, with nothing more to support it, does not remove the doubt first created in the court's mind by his answer given on direct examination. From the foregoing, the court cannot say, beyond a reasonable doubt, that the defendant resided at the premises in question or that he was connected either with the clothes or with the whisky found on the premises. This being true, the record is reduced to the thinnest sort of speculation. It must appear not only that the offense was committed, but that the evidence inculpating the defendant therewith, should be of such a character as to establish, with a degree of certainty, the defendant's connection with the premises and the whisky, transcending mere probability or suspicion. In the case at bar, the evidence does no more than create a suspicion of guilt, based primarily upon circumstantial evidence of the weakest character. In such a case, it is the duty of the court to set aside a conviction, judgment, and sentence based upon evidence which, in its strongest light, is only sufficient to create a mere suspicion of guilt. Where, as here, the evidence is circumstantial, it must be such evidence as not only to be consistent with and point to the guilt of the accused, but must also be inconsistent with his innocence. This court has repeatedly held it will not weigh the evidence and disturb a verdict if there is evidence in the record to support it. The record made in this case does not present such a situation. It is entirely inadequate and insufficient to support the conviction. In this connection, see Akins

v. State, 81 Okla. Cr. 197, 162 P. 2d 195, 196, wherein the court said:

"The general rule in criminal cases is that where the evidence is circumstantial, the facts shown must not only be consistent with and point to the guilt of the defendant, but must be inconsistent with his innocence. Owens v. State, 11 Okla. Cr. 113, 143 P. 204; Ward v. State, 15 Okla. Cr. 61, 175 P. 60; Barger v. State, 46 Okla. Cr. 95, 287 P. 1059; Dees v. State, 81 Okla. Cr. 48, 160 P. 2d 406."

In Simpson v. City of Tulsa, 67 Okla. Cr. 224, 93 P. 2d 539, this court said:

"To sustain a conviction of crime, each and every material element must be supported by the evidence.

"To sustain a conviction, it should appear not only that the offense was committed, but the evidence inculpating the defendant should do so to a degree of certainty transcending mere probability or strong suspicion.

"While it is well settled that this court will not disturb the verdict on account of the insufficiency of evidence when there is evidence to support it, the converse rule is equally well settled that it is not only the province, but the duty, of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence, to which every one is entitled who is put upon trial for an offense."

See, also, Cude v. State, 42 Okla. Cr. 357, 276 P. 240; Hewitt v. State, 61 Okla. Cr. 415, 69 P. 2d 93; Severe v. State, 64 Okla. Cr. 53, 77 P. 2d 116; Williams v. State, 38 Okla. Cr. 370, 261 P. 977; Bass v. State, 29 Okla. Cr. 92, 232 P. 955; Davis v. State, 32 Okla. Cr. 436, 241 P. 500.

Finding the evidence entirely insufficient to support the conviction, the case is reversed and the defendant ordered discharged.

BAREFOOT, P. J., absent and not participating. JONES, J., concurs.