**Marvin Ralph HALL, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defend-
ant in Error.**

**No. A–15344.**

*Court of Criminal Appeals of Oklahoma.*

Oct. 13, 1971.

Ward, Brown & Perrault, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Max Martin, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

This is an appeal from the District Court of Tulsa County, Oklahoma, case number 23,322, on a charge of Indecent Exposure, in which plaintiff in error, Marvin Ralph Hall, hereafter referred to as defendant, was found guilty by the Court, without a jury, and was sentenced to serve one year in the State Penitentiary.

Defendant's charge was laid under the provisions of Title 21, O.S.Supp.1967, § 1021, which provides:

"Every person who *wilfully* either:

(1) lewdly exposes his person, or private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; or, * * *" (Emphasis added.)

The State offered the testimony of only one witness to sustain this conviction. This witness had been a Registered Nurse for ten years, and at this time was employed at St. Johns Hospital in Tulsa. She testified that while she was delivering her four year old daughter to the nursery, as they passed by the parking lot, her daughter called the man's actions to her attention; and that she observed the defendant exposing himself. She related that she observed him three times; the first time she was walking toward the nursery, about sixty (60) feet from him; the second time she and her daughter were passing through the gate, when she looked back again. After she delivered her daughter to the nursery, she went to the second floor of the "parkaid" building, next to the hospital, and observed him the third time.

The witness testified that the time was about twenty minutes to seven o'clock (6:40 A.M. Daylight Savings Time) when she observed him moving his penis "in a circular motion and up and down." When she observed him the second time, he was doing the same, but the third time he was doing nothing. She described how he was dressed, "He was wearing a light, almost white, short-sleeved shirt and gray trousers." She stated also that the defendant was behind his truck in the vicinity of the trash-rack in the parking lot.

█ With reference to the condition of the light and time of day, the complaining witness testified thusly: "It was daylight; approximately twenty minutes to seven." It is interesting to observe however, that when the defense offered the testimony of one of defendant's competitive trash-haulers, who related that during August, 1967, at six o'clock A.M., Daylight Savings Time, it was dark and that it was necessary to use his truck lights, the prosecutor objected and asserted that defense counsel was "* * * trying to establish this man as an expert meteorologist." Nonetheless the trial court wisely permitted the witness to testify.

Defendant testified in his own behalf and introduced the testimony of two other witnesses. Mr. Lee Paris testified concerning his own arrival in the vicinity of the parking lot about seven fifteen A.M. that morning, when he saw the defendant loading his trash truck. He also stated, that sometimes other people drive in and unload trash in the trash container which often over-loads it.

Mr. John C. Gotcher, a competitor in the trash hauling business, testified concerning how the trash business operates, and to the extent of daylight about that time of day when this incident allegedly occurred. This witness finally cleared the record to properly reflect, that during the months of Daylight Savings Time he actually commences his work an hour earlier each day, than he does during Standard time, because the clock is moved forward one hour.

When defendant testified, he recalled that he did urinate in the truck-hopper that morning, because it left no water residue on the parking lot. He testified further that he did not see the complaining witness in or near the parking lot that morning. with reference to how he was dressed, he related that he always wears "bib-overalls" and a tee-shirt. He stated also that he urinated in the truck-hopper that morning because at that time of the morning there was no business place open where a person could go to relieve himself.

On direct examination, defendant admitted that on two prior occasions he had been convicted for the offense of indecent exposure. The first was October 3, 1951, when he was given a five-year suspended sentence; and the second such conviction was on January 4, 1956. He also admitted

that in 1946, when he was sixteen years of age, he served two years in the reformatory at Granite for larceny. However, he related further that since the second conviction for exposure, twelve years earlier, he has received treatment by a psychiatrist, and has participated in group psychiatric therapy, and as a result he no longer has the compulsion to expose himself. He related that he owns and operates the trash hauling business, and also owns a service station and garage. He is divorced from his first wife, but assists in providing support for the two daughters by that marriage, one of whom was sixteen and the other twenty years old, who attends college.

Defendant argues three propositions in his brief. The first contends the evidence is insufficient to sustain the conviction; secondly, that the trial court failed to resolve reasonable doubt in favor of the defendant; and third, that there was no showing of criminal intent to commit the crime charged.

The record in this trial leaves certain elements in doubt. The prosecutrix testified that it was daylight, about twenty minutes to seven. The defense witnesses testified that it was not clear daylight at that time of the morning. The Court takes judicial notice of the "Solar Ephemeris" and the following: That Daylight Savings Time was in effect on that date, and the clocks were turned forward one hour; and, that the Solar Ephemeris reflects, for the general longitude and latitude readings for the vicinity of Tulsa, Oklahoma, that the sun rise occurred at 6:36 A.M., Daylight Savings Time (5:36 A.M. Standard Time). The incident allegedly occurred about four minutes after sun-rise. Consequently, the daylight condition was "early dawn," and the prosecuting witness probably could have seen a man sixty feet away, but certainly not as clearly as she could have seen him thirty minutes later.

With reference to defendant's propositions, the evidence does appear to be insufficient to clearly prove the offense charged; and as we review the record, some reasonable doubt exists in the testimony, which we believe would ordinarily be resolved in defendant's favor. There is no doubt in this writer's mind, except for defendant's previous convictions, he probably would not have been found guilty on this charge. This probability appears evident because the prosecutrix's testimony standing alone, in view of all the facts presented, is not sufficient to sustain the allegation of "wilful exposure." The witness would not, or did not, testify that the man was doing anything other than urinating; instead she persisted in stating that "he was moving his penis in a circular motion and up and down." At the preliminary examination, the witness stated in answer to the question that she saw no urine; but under the circumstances, it is doubtful that she could have seen such. If the defendant was the man she saw, as she identified him at the trial, and in the police line-up, his explanation does not appear to be unreasonable or illogical. The witness specifically testified that the man made no effort to attract her attention; and that the only reason she first observed him was when her daughter called his actions to her attention. With reference to her continuous description that defendant moved his penis, "in a circular and up and down motion," such motion is not an uncommon practice among younger men when they are urinating. This fact was admitted by the witness on cross-examination, except that she added the word "vigorously" to her description. But she was unable to state whether or not the man had an erection.

Defendant's brief points out that the witness was unable to identify the defendant in the police line-up, until the men were required to look down at their shoes. When she observed the bald-spot on top of defendant's head, she then identified him as being the man. In short, it is obvious that some doubt existed in the witness' mind, concerning the man's physical appearance. A conflict in the testimony also appears to exist, to the extent at least, that at one

place in the preliminary examination, she stated the first time she observed the man, he was loading trash in the truck; whereas, at another place in her testimony at the trial, she did not observe the man until her daughter called his actions to her attention.

The record is clear in one respect at least, that the man did not attempt to attract the witness' attention. It is obvious that the clothing the man wore, as the witness described it, was different to what defendant testified he usually wore; this considered with the fact that Mr. Paris testified that other persons drive their trucks into the area and unload trash in the trash-bin, creates some possibility of doubt, at least. The defendant admitted that he urinated in the truck-hopper. If this was the act which the prosecuting witness observed, it would appear that her conclusions that defendant "wilfully" exposed himself might be a self-imposed impression.

As we review this record, considerable doubt exists in the facts presented to the Court. Ordinarily that doubt would be resolved in defendant's favor, because of the time of the day; the condition of the light at that early hour; the distance over which the act was observed; the observance by only one witness, influenced by the presence of her small daughter; and the admitted past convictions of the defendant. All of these factors caused the trial court concern in reaching a decision. That concern is reflected in the record by the trial judge's remarks at the conclusion of the trial.

This Court stated in Ritter v. State, 84 Okl.Cr., 418, 183 P.2d 257:

"To sustain a conviction of crime, each and every material element must be supported by the evidence. * * * [I]t should appear not only that the offense was committed, but the evidence inculpating the defendant should do so to a degree of certainty transcending mere probability or strong suspicion."

Quoting further from Simpson v. City of Tulsa, 67 Okl.Cr. 224, 93 P.2d 539, this Court continued:

"While it is well settled that this Court will not disturb the verdict on account of the insufficiency of evidence when there is evidence to support it, the converse rule is equally well settled that it is not only the province, but the duty, of the court to set aside such a verdict when it is contrary to the evidence, or where there is no evidence to support it. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence, to which everyone is entitled who is put upon trial for an offense."

From the review of the evidence set forth, the Court cannot say, beyond a reasonable doubt, that the defendant *wilfully* exposed himself in this case. But from defendant's remarks made at the time judgment and sentence was imposed, it is apparent that defendant acknowledged to some degree, at least, that the suspicious element might be more than that. However, under the circumstances, it is doubtful that further incarceration of defendant will serve the desired purposes. Therefore, this Court concludes that the sentence imposed herein should be modified.

It is therefore ordered that the judgment and sentence in District Court of Tulsa County case number 23,322 shall be modified from one year imprisonment to a fine of One Thousand Dollars ($1,000.00), the payment of which shall be worked out with the District Court of Tulsa County, and as modified, the judgment and sentence is affirmed.

NIX, J., concurs,

BUSSEY, P. J., concurs in results.